1   RON E. SHULMAN, State Bar No. 178263
    rshulman@wsgr.com
2   TERRY KEARNEY, State Bar No. 160054
    tkearney@wsgr.com
3   JULIE M. HOLLOWAY, State Bar No. 196942
    jholloway@wsgr.com
4   SCOTT SHER, State Bar No. 190053
    ssher@wsgr.com
5   S. MICHAEL SONG State Bar No. 198656
    msong@wsgr.com
6   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
7   650 Page Mill Road
    Palo Alto, CA 94304-1050
8   Telephone:  (650) 493-9300
    Facsimile:   (650) 565-5100
9
    TUNG-ON KONG, State Bar No. 205871
10  tkong@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
11  Professional Corporation
    One Market Street
12  Spear Tower, Suite 3300
    San Francisco, CA 94105-1126
13  Telephone:  (415) 947-2000
    Facsimile:   (415) 947-2099
14
    Attorneys for Defendant
15  NUANCE COMMUNICATIONS, INC.

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19  Abbyy USA Software House, Inc.,              )  Case No.: CV-08-1035-JSW
                                                 )
20          Plaintiff,                           )  **DEFENDANT NUANCE**
                                                 )  **COMMUNICATIONS, INC.'S**
21      v.                                       )  **MEMORANDUM OF POINTS AND**
                                                 )  **AUTHORITIES IN SUPPORT OF ITS**
22  Nuance Communications Inc.                   )  **MOTION TO DISMISS CLAIMS SIX**
                                                 )  **THROUGH NINE OF ABBYY USA's**
23          Defendant.                           )  **AMENDED COMPLAINT**
                                                 )
24                                               )  Date:  October 3, 2008
                                                 )  Time:  9:00 am.
25                                               )  Judge: Hon. Jeffrey S. White
                                                 )  Courtroom 2
26  _____  )
                                                 )
27

28

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT PURSUANT TO CIVIL STANDING ORDER RULE 6 ..........iv

NOTICE OF MOTION ....................................................................................................1

STATEMENT OF THE CASE ..........................................................................................1

ARGUMENT ....................................................................................................................1

I.    THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6) ......................1

II.   THE ANTITRUST CLAIMS FAIL TO ALLEGE CONDUCT THAT VIOLATES
      THE ANTITRUST LAWS..............................................................................................2

      A.    Sixth Claim .....................................................................................................2

            1.    Exclusive Dealing ...............................................................................3

            2.    Agreements with Competitors.............................................................5

            3.    Acquisition of Competitors .................................................................9

            4.    Litigation Threats ..............................................................................10

            5.    Patent Acquisitions ............................................................................11

      B.    Seventh Claim ..............................................................................................12

      C.    Eighth Claim ................................................................................................13

      D.    Ninth Claim ..................................................................................................14

III.  CONCLUSION ...........................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Tobacco Co. v. United States,*
    328 U.S. 781 (1946) ........................................................................................ 8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983) .............................................................................. 6, 7, 11

*Atl. Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990) ................................................................................. 4, 5, 6

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ............................................................................ *passim*

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ...................................................................................... 5, 6

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986) ................................................................................ 6, 7, 10

*Cascade Health Solutions v. PeaceHealth,*
    515 F.3d 883 (9th Cir. 2008)............................................................................ 13

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994)................................................................................ 1

*Coastal States Mktg., Inc. v. Hunt,*
    694 F.2d 1358 (5th Cir. 1983)......................................................................... 11

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................................................ 1

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
    858 F.2d 499 (9th Cir. 1988)...................................................................... iv, 15

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) ........................................................................................ 11

*F.T.C. v. Arch Coal, Inc.,*
    329 F. Supp. 2d 109 (D.D.C. 2004) ................................................................. 9

*Kendall v. Visa USA, Inc.,*
    518 F.3d 1042 (9th Cir. 2008)..................................................................... 8, 11

*Kingray, Inc. v. NBA, Inc.,*
    188 F. Supp. 2d 1177 (S.D. Cal. 2002) ....................................................... 3, 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .......................................................................... iv, 6, 10, 14

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ................................................................. 11

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004) ...................... 15

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ......................................................... 3, 4, 14

*Pacific Express, Inc. v. United Airlines, Inc.*,
    959 F.2d 814 (9th Cir. 1992) ..................................................................... 2

*PrimeTime 24 Joint Venture v. NBC*,
    219 F.3d 92 (2d Cir. 2000) ...................................................................... 11

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) .......................................................................... 10, 11

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) ............................................................................... 2

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) .................................................................. 2, 8

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ...................................................................... 2

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961) ............................................................................... 3

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ................................................................... 14

*United States v. Oracle Corp.*,
    331 F. Supp. 2d 1098 (N.D. Cal. 2004) ..................................................... 9

**STATUTES**

15 U.S.C. § 2 ............................................................................... 2, 9, 12

15 U.S.C. § 15 ............................................................................... 6, 15

15 U.S.C. § 18 ............................................................................... 9, 14

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1

**MISCELLANEOUS**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 320c5 (3d ed. 2007)......................... 15

U.S. Dep't of Just. & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing of Intellectual Property* § 5.7 (1995)..................................................................... 12

U.S. Dep't of Just. & Fed. Trade Comm'n, *Horizontal Merger Guidelines* (1992, § 4 on efficiencies (as revised 1997))............................................................. 9, 12

1

**Summary of Argument Pursuant to Civil Standing Order Rule 6**

2      Abbyy USA's antitrust claims consist of a hodgepodge of vague, confusing, and cursory

3  allegations regarding purportedly illegal activity.  Because of the lack of specificity of the claims

4  raised against Nuance, it is difficult to ascertain exactly what conduct by Nuance Abbyy USA has

5  alleged is illegal under the Sherman Act.  Indeed, Abbyy USA's antitrust claims are so vague that

6  they fail the most basic pleading standards for an antitrust complaint.

7      **First,** the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

8  1955 (2007), makes it clear that the type of conclusory allegations of exclusive dealing,

9  agreements on prices, unnamed acquisitions and litigation threats raised here should not survive a

10  motion to dismiss.  In the absence facts that plausibly suggest an antitrust violation, a company

11  subject to such claims cannot determine what the conduct was that allegedly violated the antitrust

12  laws.  *Id.* at 1974.  As such, Abbyy USA's antitrust claims should be dismissed.

13      **Second,** many of Abbyy USA's claims should be dismissed because they do not allege

14  "antitrust injury."  Several of the allegations raised in claim six, as well as claims seven, eight and

15  nine, allege that Nuance's actions resulted in "stabilized prices," or "higher prices" "to the

16  detriment of the consuming public."  *See* Compl. ¶ 39 (Claim Six); Compl. ¶ 48 (Claim Seven);

17  Compl. ¶ 52 (Claim Eight); Compl. ¶ 56 (Claim Nine).  As the Supreme Court has made clear,

18  competitors cannot "recover damages for any conspiracy by petitioners to charge higher than

19  competitive prices, . . . [because] it could not injure respondents:  as petitioners' competitors,

20  respondents stand to gain from any conspiracy to raise the market price[.]"  *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986).

22      **Third,** Abbyy USA's only specific allegation of an anticompetitive acquisition is the 2000

23  acquisition of Caere by Nuance.  Compl. ¶¶ 54-57 (Claim 9).  The statute of limitations for such

24  claims is four years.  *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 501 (9th

25  Cir. 1988) ("Antitrust actions under the Clayton Act are subject to a four-year statute of

26  limitations. 15 U.S.C. § 15b (1982).").  The Caere acquisition in 2000, is well-beyond the four-

27  year statute of limitations.

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on October 3, 2008 at 9:00 a.m. or as soon thereafter as may be heard, in the courtroom of the Honorable Jeffrey S. White, located at 450 Golden Gate Avenue, Courtroom 2, 17th Floor, San Francisco, California 94102, Defendant Nuance Communications, Inc. ("Nuance") will and hereby does move for an order granting Nuance's Motion to Dismiss Plaintiff Abbyy USA Software House's ("Abbyy USA") Sixth, Seventh, Eighth, and Ninth Causes of Action pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Rules of this Court. Nuance submits this memorandum in support of its motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF THE CASE**

On June 4, 2008, Abbyy USA amended its complaint for declaratory judgment for noninfringement and invalidity of certain Nuance patents and added antitrust claims alleging that Nuance engaged in a series of actions that constitute monopolization in violation of Section 2 of the Sherman Act (Compl. ¶¶ 31-43), attempted monopolization in violation of Section 2 of the Sherman Act (Compl. ¶¶ 44-49), exclusive dealing in violation of Section 1 of the Sherman Act (Compl. ¶¶ 50-53), and a substantial lessening of competition in violation of Section 7 of the Clayton Act (Compl. ¶¶ 54-57). Nuance moves to dismiss these antitrust claims.

**ARGUMENT**

**I.     THE STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)**

A complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). A plaintiff has an obligation to "provide the 'grounds' of [its] 'entitle[ment] to relief,'" which "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1959 (citations omitted). *Twombly* "retired" the former dismissal standard established in *Conley v. Gibson*, 355 U.S. 41 (1957). In rejecting *Conley's* pleading standard, *Twombly* held that a complaint cannot survive dismissal if it fails to plead facts that ***plausibly*** suggest antitrust conspiracy. *Twombly*, 127 S. Ct. at 1974.

Specifically for claims brought under Section 1 of the Sherman Act, *Twombly* requires that a court examine whether the complaint alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 1965.  If allegations in a complaint, taken as true, cannot raise a claim of entitlement to relief, that "'basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Id.* at 1966 (citations omitted) (alteration in original).  Likewise, a complaint alleging violations of Section 2 of the Sherman Act must allege sufficient facts to explain the nature of the conduct that violates the antitrust laws.  *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (dismissal of Section 2 claim appropriate "'notwithstanding its conclusory language regarding the elimination of competition'") (*quoting Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 735 (9th Cir. 1987)).

This pleading requirement is an essential tool.  It ensures that meritless antitrust claims—particularly those based on a flawed legal theory—will be dismissed.  *See Twombly,* 127 S. Ct. at 1966-67; *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (emphasizing that courts need to "exercise sound discretion and use the tools available" to dismiss baseless antitrust claims).

## II.    THE ANTITRUST CLAIMS FAIL TO ALLEGE CONDUCT THAT VIOLATES THE ANTITRUST LAWS

### A.    Sixth Claim

Abbyy USA's Sixth Claim is for monopolization under Section 2 of the Sherman Act. *See* 15 U.S.C. § 2.[1]  Paragraph 38 of the Sixth Claim identifies five separate "predatory acts" as the basis for its claim under Section 2 of the Sherman Act.  None of these alleged predatory acts,

---

[1] "'In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury.'"  *SmileCare Dental*, 88 F.3d at 783 (*quoting Pacific Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992)).

1  considered separately below, are pleaded with anywhere near the level of specificity required

2  under the Federal Rules to survive a motion to dismiss.

3               **1.    Exclusive Dealing**

4       The first "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "entered

5  into exclusive contracts with retail outlets in an attempt to foreclose the number of outlets

6  available to competitors' products."  Compl. ¶ 38(a).  The claim does not provide any additional

7  facts regarding these so-called exclusive dealing contracts, but instead relies entirely on

8  unsupported legal conclusions.  It is clear that exclusive dealing allegations—such as those made

9  by Abbyy USA—supported only by "bare legal conclusions," should not survive a motion to

10 dismiss.  *See Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1196-97 (S.D. Cal. 2002).

11      Specifically, the claim does not provide any facts pertaining to the exclusive dealing

12 contracts—namely, **what** types of contracts; with **whom** Nuance contracted; **how much** of

13 market the agreements foreclosed; the **length** of the agreements; or whether there were

14 **alternative channels** available to Abbyy USA or its competitors.  Indeed, Abbyy USA has failed

15 to allege any facts which, even if assumed to be true, would establish that the alleged exclusive

16 dealing contracts have foreclosed Abbyy USA or other competitors from selling in the Full Text

17 OCR software market.

18      Abbyy USA's only allegation with regard to foreclosure is that Nuance's conduct has had

19 the effect of "eliminating Abbyy USA as a potential and actual competitor in *certain retail*

20 *outlets*."  Compl. ¶ 43 (emphasis added).  However, this allegation is precisely the type of "bare

21 legal conclusion" that courts in this Circuit have concluded should not survive a motion to

22 dismiss.  *See Kingray*, 188 F. Supp. 2d at 1197.  Abbyy USA has not alleged that the alleged

23 exclusive contracts with "certain retail outlets" prevent Nuance's competitors from competing in

24 the market or that the sales through those retail outlets "constitute a substantial share of the

25 relevant market."  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961); *see also*

26 *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) ("'Exclusive dealing is

27 an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen

28 out of a market by the exclusive deal.'") (citation omitted).  As the Supreme Court has often

1    declared, "[t]he antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'"

2    *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990).  Even accepting as true that

3    Abbyy USA has been eliminated from "certain retail outlets," this fact does not show harm to

4    competition in the market generally as the antitrust laws require, as opposed to specific harm to

5    Abbyy USA.

6        Additionally, Abbyy USA has not alleged that the exclusive contracts with "certain retail

7    outlets" have prevented it from selling Full Text OCR software to end users.  Instead, Abbyy

8    USA has alleged that it is prevented from selling through one means of distribution: "certain retail

9    outlets."  Compl. ¶ 43.  In *Omega Environmental*, the Ninth Circuit explained that courts should

10   be skeptical of claims of exclusive dealing that restrict only one means of distribution: "If

11   competitors can reach the ultimate consumers of the product by employing existing or potential

12   alternative channels of distribution, it is unclear whether such restrictions foreclose from

13   competition *any* part of the relevant market."  127 F.3d at 1162-63.  Abbyy USA has made no

14   allegations that state or even imply that "certain retail outlets" are the only way to sell Full Text

15   OCR software to end users.  In fact, Abbyy USA alleges that Nuance's Full Text OCR software is

16   "sold directly to consumers, home offices, small businesses and Original Equipment

17   Manufacturers (OEMs)," and is also licensed and sold to OEMs and "other software companies."

18   Compl. ¶¶ 33-35.  By Abbyy USA's own admission, direct sales and licensing agreements are

19   alternative methods for distributing Full Text OCR software.

20       Abbyy USA also does not allege that the exclusive agreements at issue are with such a

21   large number of retail outlets that Abbyy USA cannot reach end users by selling its products

22   through the remaining retailers.  At the same time, in its Answer to Nuance's Complaint

23   transferred to this Court, Abbyy USA admits that it sells through online retailers and alleges that

24   Nuance also sells directly to end users as well as through licensing agreements.  *See* Answer and

25   Counterclaim of Abbyy USA Software House, Inc.; Demand for Jury Trial ¶ 20.  The

26   contradiction dooms Abbyy USA's exclusive dealing claim, as it demonstrates that Abbyy USA

27   has not been foreclosed from selling its products, and admits that its products can be, and indeed

28   are, sold through other channels of distribution.

1    Courts in this Circuit have dismissed for lack of specificity far more detailed claims of

2  illegal exclusive dealing.  For example, in *Kingray,* the Court dismissed a claim that alleged that

3  the defendants "'[a]greed, conspired, and/or contracted to distribute [the NBA League Pass] to

4  satellite dish owners/users on an exclusive basis through DirecTV, thereby limiting and

5  restricting competition at the consumer level,' as consumers have been deprived of the benefit of

6  free and open competition among satellite television providers."  188 F. Supp. 2d at 1197

7  (citation omitted).  The complaint "further allege[d] that no other satellite provider, such as

8  Echostar, is authorized to provide NBA League Pass games."  *Id.*  Finding that "[t]hese

9  allegations are bare legal conclusions," the Court dismissed the complaint for failing to allege

10  sufficient facts regarding the nature of the exclusive dealing arrangements, the effect of the

11  exclusive dealing arrangements, or whether alternative avenues of distribution existed.  *Id*. at

12  1197-98.  The Sixth Claim fares no better and should be dismissed for the same reasons.

13    **2.    Agreements with Competitors**

14    The second "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "sought

15  to reach agreement with competitors on pricing so that Nuance could raise prices without regard

16  to market pressure."  Compl. ¶ 38(b).  The Court should dismiss this claim for three reasons.

17  First, under well-established Supreme Court precedents, cannot challenge conduct that has the

18  effect of raising prices because they do not suffer antitrust injury as a result of such an alleged

19  conspiracy.  Second, Abbyy USA lacks antitrust standing to bring such claims: direct purchasers

20  of Full Text OCR software, not a competitor like Abbyy USA, are the proper plaintiffs to bring

21  claims for price fixing.  Third, Abbyy USA's bare allegation that Nuance "sought to reach

22  agreement with competitors on pricing" is insufficiently pleaded to survive a motion to dismiss

23  under the Supreme Court's recent *Twombly* decision.

24    **First**, Abbyy USA's claim does not allege cognizable "antitrust injury."  In *Brunswick*

25  *Corp. v. Pueblo Bowl-O-Mat, Inc.*, the Supreme Court explained that in order to recover under the

26  antitrust laws, "[p]laintiffs must prove antitrust injury, which is to say injury of the type the

27  antitrust laws were intended to prevent and that flows from that which makes defendants' acts

28  unlawful."  429 U.S. 477, 489 (1977); *see also Atl. Richfield*, 495 U.S. at 339 n.8 ("Respondent's

1   theory would equate injury in fact with antitrust injury.  We declined to adopt such an approach in

2   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), and *Cargill, Inc. v. Monfort*

3   *of Colorado, Inc.*, 479 U.S. 104 (1986), and we reject it again today.") (Internal parallel citations

4   omitted).  The "antitrust injury" requirement deliberately restricts who can sue and on what types

5   of claims because "'Congress did not intend the antitrust laws to provide a remedy in damages for

6   all injuries that might conceivably be traced to an antitrust violation.'"  *Associated Gen.*

7   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534-35 (1983)

8   (citation omitted); *see also Matsushita*, 475 U.S. at 582-83 ("[R]espondents [cannot] recover

9   damages for any conspiracy by petitioners to charge higher than competitive prices in the

10  American market, . . . [because] it could not injure respondents:  as petitioners' competitors,

11  respondents stand to gain from any conspiracy to raise the market price[.]").

12          Even if the Court presumes for purposes of this motion to dismiss that Nuance not only

13  "sought to reach agreement with competitors on pricing," but actually did reach such an

14  agreement, it is clear that Abbyy USA did not suffer antitrust injury.  As a competitor, higher

15  prices for Full Text OCR "would have worked to [Abbyy's] advantage" by allowing Abbyy USA

16  to charge higher prices as well or charge lower prices and make more sales.  *See Atl. Richfield*,

17  495 U.S. at 337.  Therefore, Abbyy USA's claim that Nuance sought to set prices with

18  competitors should be dismissed because Abbyy USA suffered no antitrust injury.

19          **Second**, Abbyy USA does not have antitrust standing.  In order to bring an antitrust claim

20  for damages, a plaintiff not only must allege antitrust injury, as explained above, but also must

21  have antitrust standing.  As explained in *Cargill*, "[a] showing of antitrust injury is necessary, but

22  not always sufficient, to establish standing under § 4, because a party may have suffered antitrust

23  injury but may not be a proper plaintiff under § 4 for other reasons."  479 U.S. at 110 n.5.[2]

24          The Supreme Court's decision in *Associated General Contractors* ("*AGC*") outlines a

25  five-factor test for determining whether a plaintiff has antitrust standing: (1) the causal connection

26  _____

27      [2] Although not identified in Abbyy USA's pleadings, Clayton Act Section 4 authorizes
    private suits for damages.  15 U.S.C. § 15.

28

1    between the alleged antitrust violations and harm to the plaintiff; (2) an improper motive; (3) the

2    nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought

3    to redress with the antitrust laws; (4) the directness with which the alleged market restraint caused

4    the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative

5    recovery or complex apportionment of damages.  459 U.S. at 537-45.

6           The proper plaintiffs to bring a price-fixing claim here would be direct purchasers of Full

7    Text OCR software, not Abbyy USA.  If the price of such software increased above competitive

8    levels as a result of the alleged price fixing, direct purchasers would have been harmed when they

9    paid the overcharge.  In contrast, as a competing supplier, Abbyy USA would have benefited if its

10   competitors agreed to raise prices.  Because any harm that Abbyy USA suffered was indirect (or

11   more likely non-existent), Abby USA does not have antitrust standing to bring its price-fixing

12   claim under the six-factor *AGC* test.  The lack of connection between the alleged price-fixing and

13   any harm to Abbyy USA means Abbyy USA cannot satisfy the first and fourth factors.  Under the

14   third factor, the fact that Abbyy USA would benefit from the alleged price fixing necessarily

15   means that the "harm" suffered by Abbyy USA is not of a type that Congress sought to redress

16   with the antitrust laws.  Finally, because direct purchasers and not Abbyy USA would pay the

17   resulting overcharges, Abbyy USA cannot satisfy the fifth and sixth factors.  Any damages to

18   Abbyy USA would necessarily be speculative, and any recovery by Abbyy USA would risk

19   duplicating the damages to which the direct purchasers would be entitled.

20          **Third**, even if the Court were to conclude that Abbyy USA has suffered antitrust injury

21   and has standing to pursue its claim that Nuance sought to fix prices, the Court should dismiss the

22   allegation as insufficiently pleaded to survive a motion to dismiss under *Twombly*.  The Supreme

23   Court explained in *Twombly* that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

24   dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

25   of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

26   recitation of the elements of a cause of action will not do."  127 S. Ct. at 1964-65 (second

27   alteration in original) (citations omitted).  The Court went on to conclude that a complaint

28

1    alleging a conspiracy among competitors needs to contain enough facts to plausibly suggest an

2    agreement and not facts that are merely consistent with such an agreement.  *Id.* at 1959.

3        As the Ninth Circuit recently recognized in *Kendall v. Visa USA, Inc.*, "to allege an

4    agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific

5    time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond

6    to allegations of a conspiracy an idea of where to begin."  518 F.3d 1042, 1047 (9th Cir. 2008)

7    (*quoting Twombly*, 127 S. Ct. at 1970 n.10); *see also Rutman Wine*, 829 F.2d at 736 ("The

8    pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts

9    'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get

10   nowhere merely by dressing them up in the language of antitrust.'") (citations omitted).

11       Abbyy USA's conclusory and formulaic allegations regarding Nuance's alleged

12   agreement(s) with its competitors cannot survive a motion to dismiss.  Abbyy USA has not

13   alleged any specific time, place, or person(s) involved in the alleged conspiracy.  Abbyy USA has

14   not even alleged, as was the case in *Twombly*, facts that could be considered parallel conduct by

15   Nuance and its competitors, let alone any facts from which an agreement could be inferred.

16       In fact, Abbyy USA's claim does not even include an explicit allegation that there was an

17   agreement or conspiracy among Nuance and its competitors.  The claim only alleges that Nuance

18   "sought" to reach agreement, not that Nuance ever reached an agreement with coconspirators.  As

19   such, there is no claim under Section 2 of the Sherman Act.  *See Am. Tobacco Co. v. United

20   States*, 328 U.S. 781, 809 (1946) ("A correct interpretation of the statute and of the authorities

21   makes it the crime of monopolizing, under § 2 of the Sherman Act, for *parties*, as in these cases,

22   to combine or conspire to acquire or maintain the power to exclude competitors . . . .") (emphasis

23   added).

24       This Court should not countenance Abbyy USA's attempt to drag this case into the

25   maelstrom of antitrust discovery based on nothing more than formulaic allegations.  *See

26   Twombly*, 127 S. Ct. at 1966-67 ("[I]t is one thing to be cautious before dismissing an antitrust

27   complaint in advance of discovery, but quite another to forget that proceeding to antitrust

28

NUANCE'S MEMO OF P'S & A'S I/S/O                    -8-
MOTION TO DISMISS CLAIMS
SIX THROUGH NINE
CASE NO.: CV-08-1035-JSW

discovery can be expensive.") (internal citation omitted).  Abbyy USA's boilerplate assertion that Nuance "sought" to fix prices with competitors is plainly insufficient under *Twombly*.

### 3.    Acquisition of Competitors

The third "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "sought to acquire competitors to reduce supply and raise prices."  Compl. ¶ 38(c).  On its face, this allegation should be dismissed because it does not allege that Nuance actually acquired any of its competitors.  Absent any such acquisitions, there is no antitrust injury.  Even if the Court presumes this to be a drafting error and assumes Abbyy USA has alleged that Nuance **actually acquired** competitors to reduce supply and raise prices, this allegation is insufficient to state a claim.  Abbyy USA has not identified **which** competitors Nuance acquired, **when** they were acquired, **whether** these competitors also sold Full Text OCR software, **what** market share these competitors had, or **whether** any of these acquisitions provided Nuance with market power.  Absent these facts, the unremarkable allegation that Nuance has acquired competitors fails to state a claim.

Acquisitions are typically challenged under Section 7 of the Clayton Act, where "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly," 15 U.S.C. § 18, although they can also be challenged under Section 2 of the Sherman Act, as Abbyy USA does in this claim.  *See* 15 U.S.C. § 2.  The U.S. Department of Justice and Federal Trade Commission jointly issued *Horizontal Merger Guidelines* explain the general considerations for whether a merger is anticompetitive.  *See* U.S. Dep't of Just. & Fed. Trade Comm'n, *Horizontal Merger Guidelines* (1992, § 4 on efficiencies (as revised 1997)) ("*Horizontal Merger Guidelines*").  Every merger case will focus on different aspects of the Guidelines, but the courts generally follow these guidelines.  *See, e.g.*, *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004); *F.T.C. v. Arch Coal, Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004).  Abbyy USA has not identified **which** competitors Nuance acquired, **when** they were acquired, **whether** these competitors also sold Full Text OCR software, **what** market share these competitors had, or whether any of these acquisitions provided Nuance with market power.

1    Absent these facts, the unremarkable allegation that Nuance has acquired competitors fails to

2    state a claim.

3         Moreover, Abbyy USA's only allegation concerning the effect of these acquisitions is that

4    they have reduced supply and raised prices.  Compl. ¶ 38(c).  As explained above, *supra*, at page

5    5, the Supreme Court has made it clear that plaintiffs such as Abbyy USA do not suffer antitrust

6    injury as a result of actions by their competitors that reduce supply or raise prices.  *See, e.g.*,

7    *Matsushita*, 475 U.S. at 582-83.  As a competitor, Abbyy USA stands to benefit from alleged

8    reduced supply and increased prices for Full OCR Text software.  In order for Abbyy USA to

9    have a viable claim, in addition to alleging specific facts regarding the transactions and market

10   power, it must also allege that the acquisitions would allow Nuance to cause anticompetitive

11   injury to Abbyy USA.  *See, e.g.*, *Cargill,* 479 U.S. at 115-17 (rejecting competitor claim that

12   merger would lead to increased price competition but acknowledging that predatory pricing as a

13   result of the merger is a viable claim).  Therefore, this claim not only fails to allege sufficient

14   facts to state a claim, but even if it did, Abbyy USA would have no standing to pursue such a

15   claim where the only alleged effect of the acquisitions has been to reduce supply and increase

16   prices.

17               **4.    Litigation Threats**

18        The fourth "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance

19   "threatened competitors and customers of competitors."  Compl. ¶ 38(d).  This allegation is

20   insufficient to state a claim because 1) it is not a violation of the antitrust laws to assert a valid

21   legal claim; and 2) to the extent that this allegation suggests that Nuance sought to reach

22   anticompetitive agreements with its competitors, the claim is insufficient under *Twombly* to state

23   a claim.

24        In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, the

25   Supreme Court explained the limited circumstances under which the use of litigation could

26   violate the antitrust laws:

27          the lawsuit must be objectively baseless in the sense that no reasonable litigant
            could realistically expect success on the merits.  If an objective litigant could

28          conclude that the suit is reasonably calculated to elicit a favorable outcome, the
            suit is immunized under *Noerr*, and an antitrust claim premised on the sham

1    exception must fail.  Only if challenged litigation is objectively meritless may a
2    court examine the litigant's subjective motivation.

3    508 U.S. 49, 60 (1993).  Therefore, unless Nuance threatened competitors with "objectively

4    baseless" litigation, Nuance is entitled to immunity.  *See id.*; *see also E.R.R. Presidents*

5    *Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).  Abbyy USA does not allege that

6    Nuance threatened or in fact engaged in any "sham" litigation as described in *Professional Real*

7    *Estate Investors*.  Nuance's alleged threats of litigation do not state a claim because Nuance is

8    entitled to sue or threaten to sue without violating the antitrust laws as long as the asserted claims

9    are not objectively baseless.  *See also PrimeTime 24 Joint Venture v. NBC*, 219 F.3d 92, 100 (2d

10   Cir. 2000); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992); *Coastal States*

11   *Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367-68 (5th Cir. 1983).

12   Abbyy USA also alleges that Nuance threatened increased litigation if competitors refused

13   to engage in anticompetitive conduct.  Like Abbyy USA's prior allegation that Nuance "sought to

14   reach agreement on pricing with competitors," this allegation fails to state a claim under *Twombly*

15   and *Kendall* because it does not provide anything but conclusory information about Nuance's

16   attempts to reach agreements with competitors.  Abbyy USA does not allege **which** competitors

17   were threatened, **when** they were threatened, **whether** any competitors reached an agreement

18   with Nuance, or **what** specific anticompetitive conduct these competitors refused to engage in.

19   Consequently, this allegation should be dismissed as well.[3]

20   ### 5.    Patent Acquisitions

21   The final "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "acquired

22   patents covering OCR technology, with the purpose of substantially lessening competition in

23   software markets."  Compl. ¶ 38(e).  Much like Abbyy USA's earlier allegation that Nuance

24   acquired competitors in order to reduce supply and raise prices, this allegation is also insufficient

25   to state a claim because it provides no basis to conclude that Nuance's alleged patent acquisitions

26   ───────────────

27   [3] To the extent such anticompetitive conduct resulted in increased prices, Abbyy USA does
     not have standing to pursue such claims under *Associated General Contractors* as direct
28   purchasers of Full Text OCR software are the proper plaintiffs.  *See* pages 6-7, *supra*.

NUANCE'S MEMO OF P'S & A'S I/S/O                    -11-
MOTION TO DISMISS CLAIMS
SIX THROUGH NINE
CASE NO.: CV-08-1035-JSW

1    have substantially lessened competition under Section 7 of the Clayton Act or have resulted in

2    monopolization under Section 2 of the Sherman Act.

3          Acquisitions of intellectual property are analyzed under the same standards explained

4    above in the *Horizontal Merger Guidelines*.  *See* U.S. Dep't of Just. & Fed. Trade Comm'n,

5    *Antitrust Guidelines for the Licensing of Intellectual Property* § 5.7 (1995) ("Certain transfers of

6    intellectual property rights are most appropriately analyzed by applying the principles and

7    standards used to analyze mergers, particularly those in the 1992 Horizontal Merger

8    Guidelines.").  Abbyy USA's bare allegation that Nuance has acquired patents covering OCR

9    technology for the purpose of substantially lessening competition is, again, a conclusory

10   allegation that should be dismissed under *Twombly*.  First, Abbyy USA does not allege **what**

11   patents were acquired, **when** they were acquired, **who** they were acquired from, or **what**

12   specifically they encompass.  Secondly, Abbyy USA does not allege any facts to establish that

13   Nuance actually owned patents which when combined with the patents it later **acquired**

14   prevented competitors from entering the Full Text OCR market or resulted in an increase in

15   market power in violation of Section 2 of the Sherman Act.  Putting it more simply, Abbyy USA

16   does not allege that any of these patent acquisitions resulted in Nuance obtaining market power in

17   Full Text OCR technology.

18        **B.     Seventh Claim**

19         In its Seventh Claim, Abbyy USA alleges that the conduct alleged in its Sixth Claim

20   amounted to attempted monopolization under Section 2 of the Sherman Act, which also makes

21   unlawful attempted monopolization.  *See* 15 U.S.C. § 2 ("Every person who shall monopolize, or

22   attempt to monopolize . . .").  This claim for attempted monopolization fails to state a claim for

23   the same reasons that the allegations of "predatory acts" asserted in the Sixth Claim failed to state

24   a claim.  Whether the conduct alleged is considered to be a violation of Section 2 as

25   monopolization or attempted monopolization, the claims are still insufficiently pleaded under

26   *Twombly* to state a claim.

27         Abbyy USA not only reasserts the same conduct as it alleged in its Sixth Claim, but also

28   contradicts its earlier assertion that "[a]t times material hereto, Nuance has had in excess of 70%

1    of the product market of Full Text OCR software in the geographic market of the United States."

2    Compl. ¶ 40.  Instead, Abbyy USA alleges that the United States is not the relevant market and

3    that there are "certain geographic submarkets within the United States" in which Nuance "had

4    less than enough market power to actually monopolize these markets."  Compl. ¶ 45.  It is within

5    these so-called "sub-markets" that Nuance has allegedly attempted to monopolize in violation of

6    Section 2 of the Sherman Act "by engaging in the aforementioned conduct and predatory acts."

7    Compl. ¶ 45.

8           By alleging the existence of sub-markets in which Nuance did not have market power,

9    Abbyy USA has provided this Court with another convincing reason to dismiss the Seventh

10   Claim.  Abbyy USA must allege facts that support that Nuance had a dangerous probability of

11   achieving market power in the "sub-markets" in which, by Abbyy USA's own admission, it did

12   not have market power.  *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir.

13   2008).  Abbyy USA alleges no such facts.  Abbyy USA does not allege **what** market share

14   Nuance had in these "sub-markets," and also does not allege **how** Nuance acted in these sub-

15   markets such that there was a dangerous probability that Nuance would achieve market power.

16   Finally, Abbyy USA does not even allege the contours of these sub-markets.  Abbyy USA only

17   alleged that there are "sub-markets" within the United States without further describing the

18   boundaries of these sub-markets.

19          **C.      Eighth Claim**

20          Abbyy USA's Eighth Claim for exclusive dealing is identical to its allegation of exclusive

21   dealing in its Sixth Claim and should be dismissed for the same reasons.  The only difference is

22   that here Abbyy USA has made the allegation under Section 1 of the Sherman Act instead of

23   Section 2 of the Sherman Act.  The primary deficiencies in the alleged conduct remain the same.

24   Abbyy USA once again alleges that the exclusive contracts at issue render "Nuance as the only

25   seller of OCR software in *certain* retail outlets."  Compl. ¶ 52 (emphasis added).  Abbyy USA

26   makes no allegations that the number of retail outlets that have exclusive contracts with Nuance

27   represent a substantial number of the total retail outlets.  As previously explained, Abbyy USA

28   also does not allege that retail outlets are a necessary means of distributing Full Text OCR

1    software.  Because Abbyy USA has completely failed to make any allegations that establish a

2    claim of exclusive dealing under Section 2 of the Sherman Act, the claim should also be

3    dismissed under Section 1.  *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir.

4    2001) (Section 1 exclusive dealing requirements stricter than under Section 2); *Omega Envtl.*, 127

5    F.3d at 1167 n.13 (no Section 1 or 2 violation where broader requirements of Clayton Act Section

6    3 not met).

7         **D.    Ninth Claim**

8         The Ninth Claim alleges the same conduct alleged in the Sixth Claim—that Nuance

9    acquired competitors and patents—but alleges that the acquisitions violate Section 7 of the

10    Clayton Act instead of Section 2 of the Sherman Act.  Abbyy USA does not include any

11    allegations that establish that Nuance engaged in acquisitions whose effect would be

12    "substantially to lessen competition, or to tend to create a monopoly" under Section 7 of the

13    Clayton Act.  15 U.S.C. § 18.

14         In this claim, Abbyy USA also alleges that Nuance has acquired Caere Corporation,

15    which has "had the effect of substantially lessening competition in certain relevant markets,

16    including the market for Full Text OCR software products."  Compl. ¶ 55.  In addition, Abbyy

17    USA alleges that this acquisition has "included the acquisition of patented OCR technology . . .

18    which has had the effect of eliminating capacity for the production of software with a resultant

19    stabilizing of prices all to the detriment of the consuming public."  Compl. ¶ 56.  As in its Sixth

20    Claim, Abbyy USA's allegations here are deficient.

21         **First**, like its claims for conspiracy, Abbyy USA does not have standing to bring this

22    claim, because as a competitor, Abbyy USA stood to benefit from any alleged anticompetitive

23    effect of the Caere acquisition.  *See Matsushita*, 475 U.S. at 582-83 ("Nor can respondents

24    recover damages for any conspiracy by petitioners to charge higher than competitive prices in the

25    American market.  Such conduct . . . could not injure respondents:  as petitioners' competitors,

26    respondents stand to gain from any conspiracy to raise the market price . . . .").  Indeed, Abbyy

27    USA alleges that the effect of the transaction was to "stabiliz[e] prices all to the detriment of the

28    consuming public."  *See* Compl. ¶56.  While the "consuming public" may have standing to bring

NUANCE'S MEMO OF P'S & A'S I/S/O                    -14-
MOTION TO DISMISS CLAIMS
SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW

this claim, Abbyy USA does not, because as its complaint makes clear, the alleged harm is the stabilization of (or increase in) prices, which is not harm to a competitor cognizable under the antitrust laws.

**Second**, Abbyy USA's Section 7 claim is time barred. The statute of limitations under Section 7 of the Clayton Act is four years. *See Conmar Corp.*, 858 F.2d at 501 ("Antitrust actions under the Clayton Act are subject to a four-year statute of limitations. 15 U.S.C. § 15b (1982)."). The Caere acquisition, which the Complaint alleges occurred in 2000 (*see* Compl. ¶56), is well-beyond the four-year statute of limitations.

**Third**, Abbyy USA does not allege any continuing violation of Section 7 that would result in the tolling of the statute of limitations, a tolling that would be required in order for even this insufficiently pleaded claim to not be time barred. *See Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004); *see also* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 320c5 (3d ed. 2007 & 2006 Supp.) (In order to toll statute of limitations, a plaintiff must allege that "the acquired assets were used in an anticompetitive way not contemplated at the time of the acquisition and caused the plaintiff injury. Once again, this subsequent and new use must be causally linked to the merger.").

## III.    CONCLUSION

For the foregoing reasons, Nuance respectfully requests that this Court dismiss Abbyy USA's Sixth through Ninth Claims.


Dated:  July 11, 2008                    WILSON SONSINI GOODRICH & ROSATI


By:_____/s/_____
                      S. Michael Song

Attorneys for Defendant
NUANCE COMMUNICATIONS, INC.