Grant E. Kinsel (State Bar No. 172407)
E-Mail: gkinsel@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone:    213.972.4500
Facsimile:    213.486.0065

Michael J. Song (State Bar No. 243675)
E-Mail: msong@foley.com
**FOLEY & LARDNER LLP**
975 Page Mill Road
Palo Alto, CA 94304-1125
Telephone: (650) 856-3700
Facsimile: (650) 856-3710

Attorneys for Plaintiff
ABBYY USA SOFTWARE HOUSE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ABBYY USA SOFTWARE HOUSE, INC.<br><br>Plaintiff,<br><br>vs.<br><br>NUANCE COMMUNICATIONS, INC.<br><br>Defendant. | Case No: CV 08-1035 JSW<br><br>**ABBY USA SOFTWARE HOUSE, INC.'S OPPOSITION TO MOTION TO DISMISS CLAIMS 6 THROUGH 9**<br><br>**DATE:    OCTOBER 3, 2008**<br>**TIME:    9:00 A.M.**<br>**PLACE:  CRT ROOM 2** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6).............................. 2

III.    ABBYY USA'S ANTITRUST CLAIMS SUFFICIENTLY ALLEGE CONDUCT THAT
VIOLATES THE ANTITRUST LAWS ................................................................. 3

       A.      Claim 6 — Actual Monopolization Under § 2 Of The Sherman Act ................... 3

              (1)     Exclusive Contracts ................................................................ 5

              (2)     Agreements With Competitors ................................................ 7

              (3)     Acquisition Of Competitors.................................................... 9

              (4)     Litigation Threats .................................................................. 9

              (5)     Patent Acquisition................................................................. 10

       B.      Claim 7 — Attempted Monopolization Under § 2 Of The Sherman Act............. 11

       C.      Claim 8 — Exclusive Dealing Contracts In Violation Of § 1 Of The Sherman Act
12

       D.      Claim 9 — Violation Of § 7 Of The Clayton Act................................................ 13

IV.     CONCLUSION.................................................................................................. 14

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page**

4

**FEDERAL CASES**

5

*Ash Grove Cement Co. v. Fed. Trade Comm'n,*
6
    577 F.2d 1368 (9th Cir. 1978) ....................................................................13

7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
    472 U.S. 585 (1985)..............................................................................................6

8

*Associated General Contractors of California, Inc. v. California State Council of*
9
    *Carpenters,*
    459 U.S. 519, 103 S.Ct. 897, 74 L.Ed2d 723 (1983)..............................................7

10

*Bell Atlantic Corporation v. Twombley,*
11
    127 S.Ct. 1955 (2006)..................................................................................... 2-3, 6

12

*Brown Shoe Co. v. United States,*
13
    370 U.S. 294 ..........................................................................................................13

14

*California v. Sutter Health Sys.,*
    130 F. Supp. 2d 1109 (N.D. Cal. 2001) ...............................................................13

15

*Cornwell Quality Tools Co. v. C.T.S. Co.,*
16
    446 F. 2d 825 (9th Cir. 1971) ................................................................................6

17

*Greyhound Comp. Corp. v. Int'l Bus. Machs. Corp.,*
18
    559 F. 2d 488 (9th Cir. 1977) ................................................................................4

19

*Haff v. Jewelmont Corporation,*
    594 F. Supp. 1468 (N.D. Cal. 1984) ....................................................................7

20

*Hospital Building Co. v. Trustees of Rex Hosp.,*
21
    425 U.S. 738 (1976)..............................................................................................6

22

*Hydranautics v. Filmtec Corp.,*
23
    70 F.3d 533 (9th Cir. 1995) ..................................................................................10

24

*Image Technical Servs., Inc. v. Eastman Kodak Co.,*
    125 F. 3d 1195 (9th Cir. 1997), *cert. denied,* 523 U.S. 1094 (1998).......................5

25

*In re eBay Seller Antitrust Litigation,*
26
    545 F. Supp. 2d 1027 (N.D. Cal. 2008) ......................................................... 4-5

27

28

1

2

## TABLE OF AUTHORITIES (CONT.)

3

4

**Page**

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969)..............................................................................................2

*Kobe, Inc. v. Dempsey Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) ..........................................................................10

*Lucas Automotive Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F. 3d 1228 (9th Cir. 1998) .........................................................................13

*Lucas v. Dep't of Corrections*,
    66 F.3d 245 (9th Cir. 1995) ................................................................................2

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*,
    392 F.3d 265 (8th Cir. 2004) ........................................................................ 13-14

*Morales-Villalobos v. Garcia-Llorens*,
    316 F.3d 51 (1st Cir. 2003)...............................................................................12

*Neitzke v. Williams*,
    490 U.S. 319 (1989)............................................................................................2

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ...........................................................................5

*Pac. Express, Inc. v. United Airlines, Inc.*,
    959 F. 2d 814 (9th Cir. 1992) .............................................................................4

*Perkins v. Standard Oil Co.*,
    395 U.S. 642 (1969)............................................................................................8

*Primetime 24 Joint Venture v. National Broadcasting Co.*,
    219 F.3d 92 (2nd Cir. 2000)..............................................................................10

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ..............................................................................8

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)............................................................................................8

*Salomon, S.A. v. Alpina Sports Corp.*,
    737 F. Supp. 720 (D. N.H. 1990)................................................................... 9-10

*SJ Advanced Tech. & Mfg. Corp. v. Junkunc*,
    627 F. Supp. 572 (N.D. Ill. 1986) ................................................................. 9-10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

LACA_1890538.2

## <u>TABLE OF AUTHORITIES (CONT.)</u>

**Page**

*Spectrum Sports, Inc. v. McQuillan,*
  506 U.S. 447 (1993)..................................................................................................12

*Standard Oil Co. v. United States,*
  337 U.S. 293 (1949)....................................................................................................6

*Tampa Elec. Co. v. Nashville Coal Co.,*
  365 U.S. 320 (1961)....................................................................................................5

*Tidewater Oil Co. v. United States,*
  409 U.S. 151 (1972)..................................................................................................12

*United States v. United States Gypsum Co.,*
  438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)..............................................4

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  395 U.S. 100 (1969)....................................................................................................8


**RULES**

Federal Rule of Civil Procedure 8 ........................................................................*Passim*

Federal Rule of Civil Procedure 12 ...............................................................................2

iv

LACA_1890538.2

**SUMMARY OF ARGUMENT PURSUANT TO CIVIL**

**STANDING ORDER RULE 6**

Defendant Nuance Communications, Inc. ("Nuance") Motion to Dismiss must be denied because it purports to require a level of specificity in the pleadings that is not required by Federal Rule of Civil Procedure 8, or any other relevant authority.  Abbyy USA's antitrust causes of action state facts sufficient to make out the alleged violations of the Sherman Act and the Clayton Act.  As such, Nuance's Motion to Dismiss must be denied.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Nuance moves to dismiss Plaintiff Abbyy USA Software House, Inc.'s ("Abbyy USA") claims six through nine, involving Abbyy USA's claims for antitrust violations.  Dkt. # 19 ("MTD").  Critically, Nuance does not dispute the two key elements underpinning Abbyy USA's claims.  First, Nuance does not dispute that Abbyy USA has pleaded the proper relevant market — Full Text OCR software sold in the Untied States.  And second, Nuance does not dispute that Abbyy USA has pleaded that Nuance has market power.

On this second point, in Abbyy USA's First Amended Complaint, Abbyy USA alleged that Nuance has "in excess of 70% of the Full Text OCR software market."  Dkt. # 8 at ¶ 40 ("FAC").  Nuance does not challenge this "in excess of 70%" market share.  Moreover, since this is a motion to dismiss, this Court must assume that Abbyy USA's allegations in its First Amended Complaint are true, and thus must assume that Nuance has more than 70% of the relevant market.  This is an enormous market share giving Nuance almost total control of the market.

Market power is perhaps the most important foundational element of proving any antitrust violation.  And not all market power is equal.  Market power is typically measured by market share.  If a defendant has a very large share of a market, one can conclude that it has an enormous amount of market power.  After all, if a defendant has a significant market share, there are few, if any, competitors to "keep the defendant honest."  The result of a large market share

1

LACA_1890538.2

often is an unfettered price spiral.  It is competition which keeps prices at reasonable levels and without competitors, a market will drift toward higher and higher prices.

It must, therefore, be taken as true that Abbyy USA is one of only a very few competitors in the market.  It must also be taken as true that Nuance is using its patent portfolio and other bullying tactics to force the slim competition that does exist out of the market.  (*See* FAC ¶ 38.) In short, Abbyy USA's claims allege a market that is totally dominated by Nuance.  It is a market ripe for abuse.

Nuance, knowing that its dominance would foreclose dismissal, ignores its huge market share throughout its opening brief.  Nuance does not even once address its total dominance of the market.  Nuance does not once dispute that it has in excess of 70% of the market.  Each of the four antitrust counterclaims must be viewed with this presumed fact in mind.  As discussed in detail below, each of Abbyy USA's four antitrust claims are properly pleaded and Nuance's Motion to Dismiss must be denied.

## II.    STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(B)(6)

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's belief of a complaint's factual allegations.").   Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

Nuance essentially bases its motion on an overly broad, inappropriate reading of *Bell Atlantic Corporation v. Twombley*, 127 S. Ct. 1955 (2006).  According to Nuance, *Twombley* changed the standards to plead an antitrust case.  (MTD at p. 1.)  This is not true as a review of the facts and holding in the case quickly reveal.

In *Twombley*, class action plaintiffs alleged a Sherman Act § 1 claim based ***exclusively*** on parallel conduct allegations.  That is, the plaintiffs did not allege facts showing that the defendants entered into an agreement in violation of  § 1, but rather, only that the defendants'

2

conduct — occurring in parallel — implied that the defendants had conspired. The Supreme Court found that because parallel conduct is consistent with both collusive and non-collusive behavior, something more is required to allege a conspiracy than just parallel conduct. Thus, the Court held, "[i]t makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." Twombley, 127 S. Ct. at 1966. The Court went on, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement as some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.*

Thus, contrary to Nuance's view that *Twombley* modified standards for pleading a Sherman Act case, all the Court required in *Twombley* was allegations, which if taken as true, would state a *prima facie* case. Put differently, *Twombley* requires nothing more than a plaintiff alleging facts sufficient to state a cause of action. In *Twombley*, allegations of parallel conduct did not allege conspiracy, and, therefore, because conspiracy is a required element of a § 1 claim, the plaintiffs failed to allege facts sufficient to constitute a cause of action. *Id.* at 1966 ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim.") In short, the *Twombley* Court did nothing more than apply F.R.C.P. 8(a)(2)'s standard of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court said, "we do not apply any 'heightened' pleading standard." *Id.* at p. 1973 n.14, 1974. As the Court will see below, Abbyy USA's First Amended Complaint easily meets this standard.

### III.    ABBYY USA'S ANTITRUST CLAIMS SUFFICIENTLY ALLEGE CONDUCT THAT VIOLATES THE ANTITRUST LAWS

#### A.    Claim 6 — Actual Monopolization Under § 2 Of The Sherman Act

Abbyy USA's sixth claim for relief alleges a § 2 Sherman Act violation — actual monopolization of the Full Text OCR software market. (FAC at ¶¶ 31-43.) As pointed out by Judge Fogel just a few months ago, "[a] claim of monopolization under § 2 of the Sherman Act

3

has two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N.D. Cal. 2008). Additionally, a "civil claim requires the further showing of an injury caused by the violation." *Id.*; *see also Pac. Express, Inc. v. United Airlines, Inc.*, 959 F. 2d 814, 817 (9th Cir. 1992) (holding that to properly allege a § 2 Sherman Act violation, a plaintiff must allege: (1) market power; (2) the willful acquisition or maintenance of that power; and (3) antitrust injury).

In its Motion to Dismiss, Nuance concedes the first element. That is, Nuance makes no attack on Abbyy USA's allegations of Nuance's monopoly power in the relevant market. Instead, Nuance argues that each example of predatory conduct, in isolation, fails to state a claim upon which relief may be granted. This, of course, is not the standard. As the Supreme Court has said, "[w]ith certain exceptions for conduct regulated as *per se* illegal because of its unquestionably anticompetitive effects, the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *United States v. United States Gypsum Co.*, 438 U.S. 422, 440-441, 98 S.Ct. 2864, 57 L. Ed. 2d 854 (1978), *quoted in eBay*, 545 F. Supp. 2d at 1032. Thus, to allege anticompetitive conduct, the plaintiff must allege: "(1) harm to the competitive process as distinct from the harm to one or more competitors; and (2) . . . that the conduct indeed has the requisite anticompetitive effect." *eBay*, 545 F. Supp. 2d at 1032.

Abbyy USA's First Amended Complaint meets the standard for pleading predatory conduct. Abbyy USA has alleged five specific acts, which taken together as part of a predatory scheme to monopolize the Full Text OCR market, clearly show anticompetitive harm to the competitive process. (*See* FAC at ¶¶ 37-38.) Importantly, given Nuance's extraordinary market power — an allegation with which Nuance does not quibble — even acts that would be otherwise lawful can be construed as predatory. *See e.g.*, *Greyhound Comp. Corp. v. Int'l Bus. Machs. Corp.*, 559 F. 2d 488, 498 (9th Cir. 1977) (holding that even lawful practices that "unnecessarily excluded competition" cannot be done legally by a monopolist). Indeed,

4

LACA_1890538.2

something as innocent as changing an established distribution channel can be predatory if done by an actor with a sufficiently large market share. *See, e.g., Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F. 3d 1195, 1206 (9th Cir. 1997), *cert. denied*, 523 U.S. 1094 (1998). Abbyy USA has alleged that Nuance's predatory conduct has had the effect of stabilizing prices and excluding competition from the Full Text OCR Market. (*See* FAC at ¶ 37.) Abbyy USA has further alleged that Nuance's predatory conduct wielded with Nuance's 70% market share has had the effect of stabilizing prices in the Full Text OCR Market. (*See* FAC at ¶¶ 40-42.) At the pleading stage, nothing more is required. *eBay*, 545 F. Supp. 2d at 1032. Nonetheless, each of Nuance's arguments with respect to the five examples of predatory conduct are addressed in detail below.

### (1)     Exclusive Contracts

In its First Amended Complaint, Abbyy USA alleged that Nuance "entered into exclusive contracts with retail outlets in an attempt to foreclose the number of outlets available to competitors' products." (FAC at ¶ 38(a).) In its Motion to Dismiss, Nuance primarily argues that Abbyy USA's allegations regarding exclusive contracts are not pleaded with the level of specificity required under the Federal Rules. (MTD at pp. 3-5.) Nuance's arguments misrepresent the law and ignores the facts of this case.

For example, Nuance argues that Abbyy USA has failed to allege that: (1) the foreclosed markets are a substantial share of the relevant market, and (2) that the foreclosed markets are the only way to sell Full Text OCR software. (MTD at p. 3-5.) In other words, Nuance argues that, unless Abbyy USA can allege that it is totally shut out by the exclusive contracts, the pleading is deficient. This is not the law. Indeed, the cases Nuance cites in support of this proposition — *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961) *and Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) — do not even involve a motion to dismiss, but involved motions for summary judgment and judgment as a matter of law, respectively.

Moreover, Nuance ignores its dominant market power in the Full Text OCR market. Abbyy USA has alleged that the share of the Full Text OCR market controlled by Nuance is greater than 70%. (FAC at ¶ 40.) This dominant market position is an important fact when

5

1   considering the exclusive dealing allegations.  Construing the facts in favor of Abbyy USA, a

2   series of exclusive contracts can be devastating to competition when viewed from Nuance's

3   dominant market position.  In a healthy market, exclusive contracts are not an impediment to

4   competition.  With many sellers in a market, there are also many ways that those sellers can

5   distribute their product.  However, in a closed market, such as this OCR market, there are few

6   actors.  When the dominant actor, here Nuance, seeks to close channels of distribution, the

7   results can be a serious elimination of the slim competition that exists.

8          Thus, when a defendant has over 70% of the market, exclusive contracts must be given

9   greater scrutiny.  None of the cases cited by Nuance show a defendant with anything near the

10  market share of Nuance.  Exclusive dealing can violate the antitrust laws if a large market share

11  actor, such as Nuance here, forecloses a substantial share of outlets.  Indeed, the Supreme Court

12  has held that as little as 6.7% foreclosure of the market is enough to be actionable.  *Standard Oil*

13  *Co. v. United States*, 337 U.S. 293, 309 (1949).  Moreover, this Circuit has agreed with *Standard*

14  *Oil* and held that 10-15% foreclosure is enough to raise a jury question.  *Cornwell Quality Tools*

15  *Co. v. C.T.S. Co.*, 446 F. 2d 825, 831 (9th Cir. 1971) (citing *Standard Oil*).

16         Further, exclusive dealing should not be viewed in isolation.  An exclusive relationship

17  that involves a monopolist or one with market power is placed under strict scrutiny.  If a firm has

18  been attempting to "exclude rivals on some basis other than efficiency, it is fair to characterize

19  its behavior as predatory."  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585,

20  605 (1985).  Moreover, the Supreme Court has indicated that courts should be reluctant to

21  dismiss antitrust claims because the relevant facts are often in the possession of the defendant.

22  *See Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976).  Beyond that, suffice it

23  to say that this is a fact-sensitive inquiry that is not to be determined at the pleading stage.

24         Finally, Nuance's major, yet unstated, premise is that Rule 8 of the Federal Rules of Civil

25  Procedure should be read out of antitrust practice.  As discussed above, notwithstanding

26  Nuance's strained reading of *Twombley*, Rule 8 remains the law of the land.  Rule 8 mandates

27  that all pleadings shall state a cause of action in "short and plain" language.  FED. R. CIV. P. 8.

28  There is no requirement to provide evidence in the pleading, as Nuance seems to demand.  Here,

6

LACA_1890538.2

1  with Nuance having a market share showing total dominance, there is very little required to

2  fulfill the pleading requirement for a § 2 claim.  Thus, Abbyy USA's Sixth Claim meets the

3  liberal pleading requirement of Rule 8 of the Federal Rules of Civil Procedure.

### (2)    Agreements With Competitors

5  In its First Amended Complaint, Abbyy USA alleged that Nuance "sought to reach

6  agreement with competitors on pricing so that Nuance could raise prices without regard to

7  market pressure."  (FAC at ¶ 38(b).)  In its Motion to Dismiss, Nuance argues that this predatory

8  conduct fails to allege a § 2 claim for three reasons: (1) Abbyy USA has not suffered antitrust

9  injury; (2) Abbyy USA does not have standing to bring such claims; and (3) Abbyy USA's

10  allegations are not plead with sufficient detail.  (MTD at pp. 5-9.)  Nuance's arguments  are not

11  consistent with the law or facts of this case.

12  As an initial matter, while Nuance seems to conflate its analysis of antitrust injury and

13  antitrust standing, the two are separate concepts.  And, while questions of antitrust standing can

14  sometimes be resolved on a motion to dismiss, questions relating to antitrust injury generally are

15  not amenable to resolution at the pleadings stage.  As Judge Patel has said,

16  > To say that a plaintiff lacks "standing" is to say that there is no set of facts

17  > which could be adduced at trial to show the requisite competitive injury;

18  > this decision can be made on a motion to dismiss.  To say that a plaintiff

19  > has not proved "antitrust injury," on the other hand, is to say that plaintiff

20  > has not satisfied the burden of showing that he or she has been injured "by

21  > reason of" the antitrust laws.  In most cases this decision cannot be made

22  > until after trial.

23  *Haff v. Jewelmont Corp.*, 594 F. Supp. 1468, 1472 n.2 (N.D. Cal. 1984).

24  To determine standing, courts generally look at three factors: (1) whether the alleged

25  injury was of a type that Congress sought to redress in providing a private remedy for violations

26  of the antitrust laws; (2) the directness or indirectness of the asserted injury; and (3) whether the

27  damages sought would create the risk of duplicate recoveries on the one hand, or the danger of

28  complex apportionment of damages on the other.  *Associated Gen. Contractors of California,*

7

*Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).

There is no doubt that Abbyy USA has pled sufficient facts to meet each of these elements. Abbyy USA alleged that Nuance's acts have caused harm to both consumers and competitors by foreclosing competition, and stabilizing prices. (FAC at ¶¶ 36-39, 41-43; *see also* FAC at ¶¶ 48, 49, 51-53, 56 and 57.) Nuance's exclusionary and predatory activity, as alleged, is specifically aimed to force its competitors from the market by eliminating the competitors' customers and potential customers. This is precisely the type of injury that Congress sought to redress by the antitrust laws because it reduces competition and harms consumer welfare. *See, e.g., Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995).

Nuance's claim that Abbyy USA would benefit from increased prices ignores the allegation that Abbyy USA has been foreclosed from even competing in certain retail outlets. There can be no question but that Abbyy USA's loss is precisely "the type of loss that the claimed violations . . . would be likely to cause." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 125 (1969). There can be no tighter connection between Nuance's alleged violations and the resulting harm to Abbyy USA. Lost sales and profits are precisely the type of injury that Congress provided for with a private remedy under Section 4 of the Clayton Act. *See Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979); *Perkins v. Standard Oil Co.*, 395 U.S. 642, 649 (1969).[1]

Finally, as discussed above, Abbyy USA has met the "short and plain" pleading requirement of Rule 8 of the Federal Rules of Civil Procedure. Nuance argues that conspiracy, price-fixing, and an agreement between co-conspirators were not properly alleged. (MTD at pp.

---

[1]     At this stage, Judge Patel's point that antitrust injury generally is not susceptible to resolution on the pleadings, bears repeating. Abbyy USA is surely entitled to discovery to demonstrate the harm to consumers and competitors caused by Nuance's conduct. It is enough, at this stage, for Abbyy USA to have alleged these facts. It will be up to Abbyy USA to prove them at the time of trial.

8

LACA_1890538.2

7-8.) Abbyy USA, however, never intended to allege a conspiracy, price-fixing, or an agreement between co-conspirators. Instead, Abbyy USA properly alleges that Nuance has engaged in predatory conduct as part of a larger scheme to obtain or retain a monopoly in a relevant market. One straw man after straw man is constructed by Nuance and then knocked down. But Nuance ignores the elephant in the room—Nuance's market share in excess of 70%.

### (3)    Acquisition Of Competitors

Nuance's arguments with respect to the third example of predatory conduct — acquisition of competitors — also fail. First, Nuance argues that Abbyy USA failed to allege an antitrust injury because it did not allege that Nuance actually acquired any of its competitors. (MTD at p. 9.) However, Abbyy USA indeed alleged that Nuance "**acquired** and sought to acquire competitors to reduce supply and raise prices." (FAC ¶ 38(c) (emphasis added).)

Second, Nuance argues that Abbyy USA's allegations fail to plead facts in sufficient detail. (MTD at pp. 9-10.) As discussed *supra*, however, Abbyy USA has met Rule 8's liberal pleading requirement.

Third, Nuance argues that Abbyy USA's allegations fail to plead Abbyy USA's antitrust standing. As discussed *supra*, however, Abbyy USA has sufficiently alleged injury to Abbyy USA's business and property and to competition as a whole, and, thus, meets the antitrust standing requirements.

### (4)    Litigation Threats

In its Motion to Dismiss, Nuance argues that it can threaten litigation without concern about antitrust violations, unless there is an allegation that the threat is "objectively baseless." (MTD at pp. 10-11.) However, an antitrust plaintiff who pleads that a defendant has engaged in litigation as part of a scheme of predatory conduct, has made sufficient allegations to withstand a motion to dismiss on *Noerr-Pennington* grounds. *See Salomon, S.A. v. Alpina Sports Corp.*, 737 F. Supp. 720, 724-25 (D. N.H. 1990) (refusing to grant plaintiff's motion to dismiss on *Noerr-Pennington* grounds because the counterclaim plaintiff adequately alleged that suit was initiated to unfairly limit and restrict competition.); *SJ Advanced Tech. & Mfg. Corp. v. Junkunc*, 627 F. Supp. 572, 579 (N.D. Ill. 1986) (same).

9

Here, Abbyy USA has alleged that Nuance "threatened competitors and customers of competitors with increased litigation," "with the purpose of stabilizing prices and/or excluding competition." (FAC ¶ 38(d).)  This allegation is similar to those made in *Alpina Sports* and *Junkunc*.  More importantly, the allegation has been made against a defendant who totally dominates the market. (FAC at ¶ 40.)

A determination of whether the "sham litigation" exception to the *Noerr-Pennington* doctrine applies in a particular case requires an analysis of whether the litigation in question was objectively baseless and done with the intent of interfering directly with the business relationships of a competitor. *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 100 (2nd Cir. 2000).  Since such an analysis is inherently fact-intensive, courts have been reluctant to dismiss a plaintiff's antitrust claims without allowing plaintiff to take discovery on these issues. *See, e.g., Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 537 (9th Cir. 1995) (holding that application of the *Noerr-Pennington* doctrine could not be done based on the pleadings).  Courts have been especially reluctant to prematurely dismiss a plaintiff's allegations of predatory conduct by litigation when that conduct is alleged as part of a larger scheme to obtain or retain a monopoly in a relevant market. *See, e.g., Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416 (10th Cir. 1952).

### (5)    Patent Acquisition

In its First Amended Complaint, Abbyy USA alleged that Nuance "acquired patents covering OCR technology, with the purpose of substantially lessening competition in software markets." (FAC ¶ 38(e).)  Nuance makes light of these allegations, arguing that these are legitimate business activities, not predatory acts. (MTD at pp. 10-12.)  Again, Nuance ignores its enormous market share, which must be assumed.  Moreover, other well-known software monopolists have made the same argument and have been soundly rejected.  The District of Columbia Circuit, sitting *en banc*, put this issue into proper focus in the case of *United States v. Microsoft*:

> [Microsoft] claims an absolute and unfettered right to use its intellectual
>
> property as it wishes:  "[I]f intellectual property rights have been lawfully

acquired," it says, then "their subsequent exercise cannot give rise to antitrust liability." Appellant's Opening Br. at 105. That is no more correct than the proposition that use of one's personal property, such as a baseball bat, cannot give rise to tort liability. As the Federal Circuit succinctly stated: "Intellectual property rights do not confer a privilege to violate the antitrust laws."

253 F.3d 34, 63 (D.C. Cir. 2001) (*en banc*).

Nuance also argues that Abbyy USA "does not allege that any of these patent acquisitions resulted in Nuance obtaining market power in Full Text OCR technology." (MTD at p. 12.) Abbyy USA, however, alleged that Nuance's acquisition of patent covering OCR technology "was done with the intent of enhancing Nuance's market share, increasing Nuance's market power, and excluding competition" and that Nuance has "in excess of 70% of the product market of Full Text OCR software in the geographic market of the United States." (FAC at ¶¶ 39-40.)

\*          \*          \*          \*          \*          \*

In sum, Abbyy USA's allegations supporting its Sixth Claim is consistent with Rule 8; it is short and to the point: Nuance has, over the last several years, monopolized a specific market. Abbyy USA alleges Nuance's market power. Abbyy USA alleges five predatory acts. Abbyy USA alleges harm to itself and the consuming public. Accordingly, Nuance's motion to dismiss the § 2 Sherman Act count must be denied.

### B.    Claim 7 — Attempted Monopolization Under § 2 Of The Sherman Act

Nuance contends that Abbyy USA has failed to plead facts sufficient to allege a § 2 Sherman Act attempt-to-monopolize violation. That contention is both legally and factually incorrect.

First, Nuance complains that Abbyy USA's Seventh Claim fails to state a claim for the reasons that the allegations of predatory acts asserted in the Sixth Claim also failed to state a claim. For the reasons set forth above, Abbyy USA's allegations of predatory acts are properly pleaded.

LACA_1890538.2

1    Second, Nuance argues that Abbyy USA's attempt allegations are inconsistent with its

2    actual monopolization allegations in its Sixth Claim. (MTD at pp. 12-13.) Nuance also argues

3    that Abbyy USA has changed the geographic market from the United States to some other

4    geographic market. (MTD at p. 13.) These arguments, however, are not supported by the plain

5    language of Abbyy USA's Seventh Claim. That claim simply acknowledges that Nuance may

6    not have the enormous 70% plus market share in every local market or every state in the union.

7    For example, hypothetically, it may be that Nuance's market share in Wyoming is only 40-50%.

8    In that case, Nuance may not have enough clout to dominate a local market. Yet there is a

9    danger that, if left unchecked, Nuance would achieve total dominance. (FAC at ¶ 47.) In that

10   regard, Abbyy USA alleges that there may be "certain geographic sub-markets within the United

11   States" where Nuance is dangerously close to actual monopoly. (FAC at ¶ 47.) This dangerous

12   probability of success is an element of an attempt violation, and is properly alleged.

13       To properly allege an attempt violation of § 2 of the Sherman Act, Abbyy USA must

14   identify a relevant product market in which Nuance's activities have harmed competition.

15   *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455-56 (1993) (citing *Walker Process Equip.*

16   *Inc. v. Food Mfg. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). At this initial pleading stage,

17   however, Abbyy USA's burden is minimal, as determination of the relevant product market is a

18   factual issue that cannot be resolved on a motion to dismiss. *See Tidewater Oil Co. v. United*

19   *States*, 409 U.S. 151, 172 (1972) (holding that issues such as relevant market can be properly

20   decided only after full development of the evidence); *Morales-Villalobos v. Garcia-Llorens*, 316

21   F.3d 51, 55 (1st Cir. 2003) (holding that even in instances where there are valid arguments that

22   the relevant market pleaded by the plaintiff is too narrow, "the matter cannot be resolved on the

23   face of the complaint"). Accordingly, Nuance's motion to dismiss Abbyy USA's Seventh Claim

24   must be denied.

25       **C.    Claim 8 — Exclusive Dealing Contracts In Violation Of § 1 Of The Sherman**

26           **Act**

27       Nuance moves the Court to also dismiss Abbyy USA's Eighth Claim, but does not

28   provide any additional argument other than those made with respect to Abbyy USA's Sixth

12

1  Claim.  (MTD at pp. 13-14.)  For the reasons set forth above, Nuance's motion to dismiss Abbyy

2  USA's Eighth Claim should be denied.  *See supra* at § III.A.1.

3      **D.**    **Claim 9 — Violation Of § 7 Of The Clayton Act**

4          Nuance argues that this Court should dismiss Abbyy USA's Ninth Claim for three

5  reasons: (1) Abbyy USA does not have standing; (2) the "Caere acquisition" is beyond the four

6  year statute of limitations; and (3) Abbyy USA fails to allege any continuing violation of § 7 that

7  would result in the tolling of the statute of limitations.  (MTD at pp. 14-15.)  Nuance is wrong on

8  all three counts.

9          First, as explained in detail above in Section III. A. 2, Abbyy USA has sufficiently

10  alleged harm to itself — loss of customers and potential customers.  (FAC at ¶ 57).  Moreover,

11  Nuance also fails to mention that § 7 is meant to prohibit acquisitions that may lead to less

12  competition.  There is no need to allege or prove actual anticompetitive effects.  Section 7 is

13  meant to stop illegal acts before they become full-blown Sherman Act violations.  *Brown Shoe*

14  *Co. v. United States*, 370 U.S. 294, 318 n.32 (1962).  This is the so-called incipient standard,

15  which has been approved by this Circuit.  *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,

16  140 F. 3d 1228, 1236 (9th Cir. 1998).  All that is necessary to prove a § 7 violation is that there is

17  an appreciable danger of anticompetitive consequences in the future.  *California v. Sutter Health*

18  *Sys.*, 130 F. Supp. 2d 1109, 1118 (N.D. Cal. 2001).  Proof of actual anticompetitive effects is not

19  required; plaintiff need only show a reasonable probability of future harm.  *Ash Grove Cement*

20  *Co. v. Fed. Trade Comm'n*, 577 F.2d 1368, 1378 (9th Cir. 1978).

21          Second, Abbyy USA has indeed alleged continuing violations of § 7 that tolls the statute

22  of limitations.  *See Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 275 (8th

23  Cir. 2004).  Specifically, Abby USA alleged "[f]ollowing Nuance's acquisition of Caere and its

24  OCR patent portfolio, Nuance engaged in conduct such as that alleged above, which has had the

25  effect of eliminating capacity for the production of software with a resulting stabilizing of prices

26  all to the detriment of the consuming public."  (FAC at ¶ 56.)  In other words, Abbyy USA did

27  not allege that it was Nuance's acquisition of Caere that violated § 7 of the Clayton Act, but

28  rather, Nuance's use of the assets acquired through that acquisition.  (FAC at ¶ 55.)  Allegations

LACA_1890538.2

1  such as this have been widely recognized.  For instance, in *Midwestern Mach. Co.*, the Eighth

2  Circuit found, "[i]f assets are used in a different manner from the way that they were used when

3  the initial acquisition occurred, and that new use injures the plaintiff, he or she has four years

4  from the time that the injury occurs to sue."    *Midwestern Mach. Co.*, 392 F.3d at 272.

5  Moreover, where a plaintiffs' injuries from a merger do not appear immediately with the

6  acquisition, the statute of limitations does not begin to run until the plaintiff has suffered injury.

7  *Id.* at 276.   In this case, Abbyy USA has alleged that its injuries were not triggered by the

8  immediate acquisition, but rather by Nuance's conduct with its acquired assets after the close of

9  the acquisition.   Accordingly, Nuance's arguments fail and its Motion to Dismiss must be

10  denied.

11  **IV.    CONCLUSION**

12       In conclusion, for the reasons set forth above, this Court should deny Nuance's motion to

13  dismiss Abbyy USA's antitrust claims.  In the alternative, this Court should grant Abbyy USA

14  leave to amend its claims.

15

16

17  Dated:  July 25, 2008                    FOLEY & LARDNER LLP
                                             GRANT E. KINSEL
18

19

20                                          By:    /s/ Grant E. Kinsel
                                                  GRANT E. KINSEL
21                                                Attorneys for Plaintiff
                                                  Abbyy USA Software House, Inc.
22

23

24

25

26

27

28

                                    14

LACA_1890538.2

1

## <u>CERTIFICATE OF SERVICE</u>

2       I HEREBY CERTIFY that on July 25, 2008 I, electronically filed **ABBY USA**

3   **SOFTWARE HOUSE, INC.'S OPPOSITION TO MOTION TO DISMISS CLAIMS 6**

4   **THROUGH 9** with the Clerk of Court by using the CM/ECF system which will send a notice of

5   electronic filing to the following:

6

7   **Seungtaik Michael Song**                    Attorneys for Defendant
    Wilson Sonsini Goodrich & Rosati              Nuance Communications, Inc.
8   650 Page Mill
    Palo Alto, CA 94303
9   6504939300
    Email: msong@wsgr.com
10  *ATTORNEY TO BE NOTICED*

11  **Tung-On Kong**
    Wilson Sonsini Goodrich & Rosati
12  Professional Corporation
    650 Page Mill Road
13  Palo Alto, CA 94304-1050
    650-493-9300
14  Fax: 650-565-5100
    Email: tkong@wsgr.com
15  *ATTORNEY TO BE NOTICED*

16

17                          /s/ Grant E. Kinsel
                            Grant E. Kinsel
18

19

20

21

22

23

24

25

26

27

28

1

1

2

3

4

5

6

7

8

9               **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12 ABBYY USA SOFTWARE HOUSE, INC.       Case No:  CV 08-1035 JSW

13          Plaintiff,             **[PROPOSED] ORDER DENYING**

                                      **NUANCE COMMUNICATIONS, INC.'S**

14       vs.                       **MOTION TO DISMISS CLAIMS 6**

                                        **THROUGH 9 OF ABBYY USA'S FIRST**

15 NUANCE COMMUNICATIONS, INC.        **AMENDED COMPLAINT**

16         Defendant.           **DATE:    OCTOBER 3, 2008**

                                        **TIME:    9:00 A.M.**

17                                         **PLACE:  CRT ROOM 2**

18

19

20

21

22

23

24

25

26

27

28

Before this Court is Defendant Nuance Communications, Inc.'s Motion to Dismiss Claims Six Through Nine Of Plaintiff Abbyy USA Software House, Inc.'s First Amended Complaint ("Nuance's Motion"). After considering the papers and arguments in support of and in opposition to Nuance's Motion, and finding that Abbyy USA Software House, Inc.'s First Amended Complaint meets the pleading requirement of Fed. R. Civ. P. 8(a)(2),

IT IS HEREBY ORDERED that Nuance's Motion is DENIED.


Dated: _____

_____
HONORABLE JEFFREY S. WHITE


        Respectfully submitted,

Dated: July 25, 2008                    FOLEY & LARDNER LLP


                                        By:    /s/ Grant E. Kinsel
                                               GRANT E. KINSEL

                                        Attorneys for Plaintiff
                                        Abbyy USA Software House, Inc.

[PROPOSED] ORDER DENYING MOTION TO DISMISS
CASE NO.: CV-08-1035-JSW

LACA_1891449.1