RON E. SHULMAN, State Bar No. 178263
rshulman@wsgr.com
TERRY KEARNEY, State Bar No. 160054
tkearney@wsgr.com
JULIE M. HOLLOWAY, STATE BAR NO. 196942
jholloway@wsgr.com
SCOTT SHER, STATE BAR NO. 190053
ssher@wsgr.com
S. MICHAEL SONG State Bar No. 198656
msong@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

TUNG-ON KONG, STATE BAR NO. 205871
tkong@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Attorneys for Defendant
NUANCE COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Abbyy USA Software House, Inc.<br><br>  Plaintiff,<br><br> v.<br><br>Nuance Communications Inc.<br><br>  Defendant. | Case No.: CV-08-1035-JSW<br><br>**DEFENDANT NUANCE COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLAIMS SIX THROUGH NINE OF ABBYY USA'S AMENDED COMPLAINT**<br><br>Date: October 3, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Court: Courtroom No. 2 |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................1

I. ABBYY USA'S OPPOSITION FUNDAMENTALLY MISSTATES THE LEGAL STANDARDS UNDER THE ANTITRUST LAWS. ............................................................1

II. ABBYY USA'S ARGUMENTS WITH RESPECT TO EACH OF ITS ANTITRUST COUNTERCLAIMS ARE FLAWED. ......................................................4

    A. Sixth Claim........................................................................................................4

        1. Exclusive Dealing .................................................................................5

        2. Agreements with Competitors...............................................................8

        3. Acquisition of Competitors ...................................................................9

        4. Litigation Threats ................................................................................10

        5. Patent Acquisitions..............................................................................12

    B. Seventh Claim .................................................................................................13

    C. Eighth Claim ...................................................................................................14

    D. Ninth Claim .....................................................................................................14

III. CONCLUSION ......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .......................................... 3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ........................................................................................................ 4, 9

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ........................................................................................................ 6, 8

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................. *passim*

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962) ............................................................................................................. 6

*Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) .................................. 13

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) ....................................................... 1, 2, 6

*Haff v. Jewelmont Corp.*, 594 F. Supp. 1468 (N.C. Cal. 1984) ...................................................... 8

*Insignia Sys., Inc. v. News Corp, Ltd.*, No. 04-4213,
    2005 WL 2063890 (D. Minn. Aug. 25, 2005) ..................................................................... 6

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .................................................................................. 3

*JM Computer Servs., Inc. v. Schlumberger Technologier, Inc.*,
    No. C 95-20349, 1996 WL 241607 (N.D. Cal. May 3, 1996) ............................................ 6

*Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177 (S.D. Cal. 2002) ............................................... 5

*Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932,
    2002 WL 31253199 (E.D.N.Y. Sept. 30, 2002) ................................................................ 10

*Matsushita v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................................ iv, 8

*Midwestern Mach. v. Northwest Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004) ....................... 14, 15

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) .................................................................. 3

*Omega Envtl. Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997) ................................... 6, 7, 14

*Oregon Natural Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ............................................................................................. 11

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007) .................... 3

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................................... 10, 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) .................................................................................... 2, 6

*SJ Advanced Tech. & Mfg. Corp. v. Junkunc*,
    627 F. Supp. 572 (N.D. Ill. 1986) ................................................................................ 11

*Salomon, S.A. v. Alpina Sports Corp.*, 737 F. Supp. 720 (D.N.H. 1990) ...................................... 11

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ..................................................................................... 2, 14

*Syncsort Inc. v. Sequential Software, Inc.*,
    50 F. Supp. 2d 318 (D.N.J. 1999) ............................................................................. 2, 10

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961) ...................................................................................................... 6

*United States v. Archer-Daniels-Midland Co.*,
    866 F.2d 242 (8th Cir. 1988) ......................................................................................... 1

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ........................................ 7, 12, 14

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) .............................................................................................. iv, 1, 5

*Viva Optique, Inc. v. Contour Optik, Inc.*, No. 03 CIV 8948,
    2007 WL 4302729 (S.D.N.Y. Dec. 7, 2007) ............................................................ 10, 11

*White Mule Co. v. ATC Leasing Co.*, 540 F. Supp. 2d 869 (N.D. Ohio 2008) ................................ 2

**STATUTES**

15 U.S.C. § 2 .............................................................................................................. 4, 13

**RULES**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 2

**MISCELLANEOUS**

Phillip Areeda & Herbert Hovenkamp,
    Antitrust Law § 320c5 (3d ed. 2007 & 2006 Supp.) ......................................................... 15

**Summary of Argument Pursuant to Civil Standing Order Rule 6**

Abbyy USA's opposition to Nuance's opening brief offers no support to save its poorly pleaded antitrust counterclaims.

**First**, Abbyy USA's fundamental argument is that it should be allowed to proceed to discovery because it alleges that Nuance has a high market share in the "OCR Software" product market. Even if it is true that Nuance has a high market share in a properly defined relevant product market, that allegation by itself is irrelevant, and for Abbyy USA to argue that it is dispositive misconstrues the central premise of our antitrust laws. The "mere possession of monopoly power . . . is not only not unlawful; it is an important element of the free-market system. . . . [T]he possession of monopoly power will not be found unlawful unless *it is accompanied by an element of anticompetitive conduct*." *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis added). Abbyy USA cannot save its Complaint with market share allegations as it fails to adequately plead any anticompetitive conduct by Nuance.

**Second**, Abbyy USA attempts to skirt antitrust pleading arguments by contending that its counterclaims allege numerous anticompetitive acts. In essence, Abbyy USA argues that the Court should excuse its poorly pleaded Complaint because it contains many allegations. However, an insufficiently pleaded claim that relies on bare legal conclusions is not magically rendered sufficient simply because it has been combined with other insufficiently pleaded claims.

**Third,** Abbyy USA does not explain how it has suffered antitrust injury. Several of the claims allege simply that Nuance's actions "stabilized prices" or led to "higher prices" to the "detriment of the consuming public." Competitors such as Abbyy USA cannot "recover damages for any conspiracy by petitioners to charge higher than competitive prices, . . . [because] it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83 (1986).

**ARGUMENT**

**I.   ABBYY USA'S OPPOSITION FUNDAMENTALLY MISSTATES THE LEGAL STANDARDS UNDER THE ANTITRUST LAWS.**

In its opening brief, Nuance explained in detail why each of Abbyy USA's antitrust claims is insufficient to state a claim.  In response, Abbyy USA urges the Court to ignore the flaws in its claims simply because Nuance did not refute that it has a high market share in the relevant market Abbyy USA alleged.  Abbyy USA's Opposition asserts that when its claims are "viewed with this presumed fact [high market share] in mind" the claims are "properly pleaded."  Opp. at 2.

This assertion runs counter to more than a century of antitrust jurisprudence.  It is axiomatic that allegations of high market share alone are insufficient to state a claim under the Sherman and Clayton Acts.  As the Supreme Court recently explained in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*:

> [t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system.  The opportunity to charge monopoly prices-at least for a short period-is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth.  To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless *it is accompanied by an element of anticompetitive conduct*.

540 U.S. at 407 (emphasis added); *see also United States v. Archer-Daniels-Midland Co.*, 866 F.2d 242, 248 (8th Cir. 1988) ("[T]he mere possession of … economic power is not unlawful.  It is not mere monopoly (a status or condition), but rather monopolization (an activity) that Section 2 condemns.") (citation omitted).

Thus, while market power is a necessary element of Sherman Act Section 2 claims, it is by no means sufficient to establish a violation.  No matter how many times Abbyy USA recites Nuance's "high market share," that fact alone (even if true) cannot convert a poorly pleaded claim into a meritorious one.  Absent sufficiently well-pleaded allegations of anticompetitive conduct—the *sine qua non* of a claim under the Sherman and Clayton Acts—Abbyy USA's claims should be dismissed.  *See, e.g.*, *Dickson v. Microsoft Corp.*, 309 F.3d 193, 209 n.17 (4th Cir. 2002) (dismissing Sherman Act Section 1 and 2 claims against Microsoft where software manufacturer was alleged to have 90% market share in the personal computer operating software market and

80-90% share in the word processing and spreadsheet software markets); *White Mule Co. v. ATC Leasing Co. LLC.*, 540 F. Supp. 2d 869 (N.D. Ohio 2008) (dismissing antitrust claims where defendant had 70% of relevant market) (additional cases discussed throughout brief).

None of Abbyy USA's five conclusory allegations of anticompetitive conduct contains facts sufficient to state a claim—indeed, they are nowhere close to satisfying the pleading requirements demanded by the courts. Even under the liberal pleading standards of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the 'grounds' of [its] 'entitle[ment] to relief,'" which "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted) (second alteration in original). Moreover, the pleading must not merely allege that the conduct is conceivable, but plausible. *Id.* at 1974. Abbyy USA's allegations do no more than recite labels and conclusions and do not provide sufficient detail to make out a plausible claim.

Abbyy USA asserts that because *Twombly* involved allegations of conspiracy under Section 1 of the Sherman Act, the pleading requirements set forth by *Twombly* somehow do not apply to the set of facts here involving Abbyy USA's Section 2 claims. Abbyy USA's assertion is incorrect. Numerous courts have held that conclusory allegations will not suffice in the context of Section 2 claims. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 783 (9th Cir. 1996) (dismissal of Section 2 claim appropriate "notwithstanding its conclusory language regarding the elimination of competition") *(quoting Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 735 (9th Cir. 1987)); *Dickson*, 309 F.3d at 213 ("The pleader may not evade [Rule 12(b)(6)] requirements by merely alleging a bare legal conclusion; … Because Gravity has failed to allege facts which, if true, would establish that the two licensing agreements at issue are unreasonable restraints on trade that caused antitrust injury to consumers, its § 1 and § 2 claims fail as a matter of law.") (alteration in original); *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 328-29 (D.N.J. 1999) (considering Section 2 claims, the court explained, "bare legal conclusions will not survive a motion to dismiss").

In addition, courts have applied the analysis set forth in *Twombly* itself outside of the context of Section 1 claims, and have relied on its framework to decide Sherman Act Section 2

NUANCE'S REPLY IN SUPPORT OF MOTION
TO DISMISS CLAIMS SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW

-2-

1  and Clayton Act Section 7 claims as well.  *See Port Dock & Stone Corp. v. Oldcastle NE, Inc.*,
2  507 F.3d 117, 121 (2d Cir. 2007) (applying *Twombly* pleading requirements to Sherman Act
3  Section 2 and Clayton Act Section 7 claims); *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007)
4  ("We are reluctant to assume that all of the language of [*Twombly*] applies only to section 1
5  allegations based on competitors' parallel conduct or, slightly more broadly, only to antitrust
6  cases."); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) ("We have
7  declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases.");
8  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (applying *Twombly* to Section 2
9  claims).  In any event, Abbyy USA agrees that "*Twombly* requires nothing more than a plaintiff
10  alleging facts sufficient to state a cause of action." Opp. at 3.

11  Instead of explaining how its claims are sufficient to state a cause of action, Abbyy USA
12  tries to characterize the insufficiency of its pleadings as questions of fact to be resolved after
13  discovery.  *See, e.g.*, *id*. at 6 (suggesting that exclusive dealing claims must go to discovery
14  because the facts are in the hands of Nuance, where Abbyy USA has not alleged any degree of
15  foreclosure); *id*. at 7 (antitrust injury cannot be decided at the pleading stage when Abbyy USA
16  has not alleged that it suffered antitrust injury); *id*. at 10 (the question of "sham litigation" is to be
17  resolved on discovery when Abbyy USA has not alleged that Nuance engaged in "sham
18  litigation"), *id*. at 6-7 ("there is no requirement to provide evidence in the pleading, as Nuance
19  seems to demand here").  Abbyy USA's assertion that Nuance "seems to demand" that Abbyy
20  USA "provide evidence in the pleading" is a red herring.  *See id*. at 6.

21  Nuance has never suggested that Abbyy USA's claims are insufficient because they are
22  not backed by evidence, although that may well be true.  The point that Abbyy USA seems to
23  miss is that the law requires more than conclusory allegations in order to proceed to discovery.  It
24  simply is insufficient to allege a variety of conduct which in the abstract violates the law without
25  any explanation as to how Nuance supposedly engaged in that conduct, and then insist that facts
26  supporting such bare conclusions will come during discovery.  The law requires Abbyy USA to
27  provide Nuance with its basis for alleging that Nuance engaged in anticompetitive conduct, which
28  it has failed to do.  Thus, it must explain in its claims, for example, that Nuance's alleged

NUANCE'S REPLY IN SUPPORT OF MOTION           -3-
TO DISMISS CLAIMS SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW

exclusive dealing resulted in foreclosure (it did not do so); that Nuance pursued objectively baseless litigation (it did not do so); that certain acquisitions provided Nuance with the ability to raise prices (it did not do so); or with which competitors Nuance entered into illegal agreements (it did not do so). *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not … proper to assume that [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged."). Abbyy USA's conclusory allegations must be dismissed.

## II. ABBYY USA'S ARGUMENTS WITH RESPECT TO EACH OF ITS ANTITRUST COUNTERCLAIMS ARE FLAWED.

### A. Sixth Claim

Abbyy USA's Sixth Claim for monopolization under Section 2 of the Sherman Act pleads five bare allegations of "predatory acts." *See* 15 U.S.C. § 2. As explained in Nuance's Memorandum of Points and Authorities in Support of Its Motion to Dismiss Claims Six Through Nine of Abbyy USA Software House ("Motion"), the allegations with regard to each "predatory act" are insufficient to state a claim. Perhaps recognizing the insufficiency of its claims, Abbyy USA now suggests that the "five specific acts, when taken together as part of a predatory scheme to monopolize" clearly satisfy Rule 8's liberal pleading standard, largely because of Nuance's market share. *See* Opp. at 4. However, since none of the predatory acts are sufficiently pleaded to support a claim, the fact that Abbyy USA has identified five such acts cannot save its claim from dismissal. An insufficiently pleaded claim that relies on bare legal conclusions is not magically rendered sufficient simply because it has been combined with other insufficiently pleaded claims. And as Nuance previously has explained, absent adequate allegations of predatory conduct, simply pleading that Nuance has a high market share is clearly not enough.[1] Motion at 2-3.

---

[1] Of course, Nuance does not concede that it has a high market share in any relevant market. Because the Complaint fails to allege any predatory acts that would give rise to a claim, there is no need to attack the Complaint as insufficiently pleaded on the issues of relevant product market and market share. Nuance does note that the Complaint fails to allege any facts to

(continued...)

NUANCE'S REPLY IN SUPPORT OF MOTION
TO DISMISS CLAIMS SIX THROUGH NINE        -4-
CASE NO.: CV-08-1035-JSW

### 1. Exclusive Dealing

Abbyy USA's primary argument is that its exclusive dealing claim cannot be dismissed because Nuance's "dominant market power" is virtually dispositive. Opp. at 5-6. Abbyy USA contends that Nuance's high market share requires the Court to "give[] greater scrutiny" to Abbyy USA's exclusive dealing claims. *See* Opp. at 6. As discussed above, Nuance's market share, without more, does not establish a violation of the Sherman Act. *See Trinko*, 540 U.S. at 407. Abbyy USA cannot salvage its deficient exclusive dealing claim with bare allegations of high market share.

Abbyy USA hides behind its market share allegation because it has nothing else to argue. Nuance has explained that Abbyy USA's allegations of exclusive dealing are insufficient to survive a motion to dismiss because they do no more than make the "bare legal conclusion" that Nuance's exclusive contracts with "certain retail outlets" violate Section 2 of the Sherman Act (and Section 1 of the Sherman Act as alleged in Abbyy USA's Eighth Claim). Motion at 3; *see Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1196-97 (S.D. Cal. 2002) ("bare legal conclusion" regarding exclusive dealing claim does not survive a motion to dismiss). As Nuance previously explained, Abbyy USA does not allege what types of contracts are involved; with whom Nuance contracted; how much of market the agreements foreclosed; the length of the agreements; or whether there were alternative channels of distribution available to Abbyy USA or its competitors. As another court in this Circuit has held, such conclusory allegations are clearly insufficient to survive a motion to dismiss:

> Plaintiff has failed to plead an exclusive dealing claim as it has failed to identify an agreement with a specific person or entity and does not identify the parts, services, or contracts involved in the alleged exclusive dealing. Antitrust pleadings are not subject to more specificity than that required by Federal Rule of Civil Procedure 8, a short and plain statement of the claim. However, failure to allege facts essential to support the elements of the claim with a minimum level of detail warrants dismissal of the claim.

---

(...continued from previous page)
support the conclusion that its proposed relevant product market of "OCR Software" is indeed an antitrust product market.

NUANCE'S REPLY IN SUPPORT OF MOTION  
TO DISMISS CLAIMS SIX THROUGH NINE -5-  
CASE NO.: CV-08-1035-JSW

*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*, No. C 95-20349, 1996 WL 241607, at *4 (N.D. Cal. May 3, 1996) (internal citation omitted).

Abbyy USA does not provide an explanation as to why its claims are not deficient given the pleading requirements set forth by courts in this Circuit. Significantly, Abbyy USA does not explain why its failure to allege how much of the market was foreclosed by these contracts or even what fraction of the total number of retail outlets were covered by such contracts with Nuance does not doom its exclusive dealing claim as a matter of law. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961); *Omega Envtl. Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997); *see also Insignia Sys., Inc. v. News Corp., Ltd.*, No. 04-4213, 2005 WL 2063890, at *3 (D. Minn. Aug. 25, 2005) ("[A]bsent some indication of the percentage of the local, regional, or national markets that the 35,000 retail outlets allegedly under exclusive contract constitute, it is impossible to evaluate the percentage of the market with which Insignia and other competitors are prevented from doing business, let alone determine that Insignia and other competitors are prevented from dealing with a significant number of retailers."); *Dickson*, 309 F.3d at 209 ("[W]ith respect to the exclusive dealing component of Gravity's claim," the failure to allege that contracts "are likely to foreclose a significant share of the relevant software markets" is fatal to plaintiff's claim.). In addition, Abbyy USA does not allege that such retail outlets are necessary to sell Full Text OCR to end-users as opposed to selling directly to end-users or licensing to OEMs or other software companies. *See* FAC ¶¶ 33-35[2]; *see Omega Envtl.*, 127 F.3d at 1162-63. Abbyy USA does not even allege that Nuance's exclusive contracts have prevented Abbyy USA from selling its own product to end-users. In fact, Abbyy USA admits in its Complaint that it sells its product through online retailers. *See* Motin at 4. Finally, while Abbyy USA alleges harm to itself, Abbyy USA does not allege harm to competition generally. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (*quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *see also Rutman Wine*, 829 F.2d at 734-35 (dismissing

---

[2] Citations to paragraphs alleged in the First Amended Complaint are abbreviated herein as "FAC ¶".

claim where competitor alleged harm to itself and not to competition).  Even accepting as true that Abbyy USA has been eliminated from "certain retail outlets," this fact does not show harm to competition in the market generally, as the antitrust laws require, as opposed to specific harm to Abbyy USA.

In response, Abbyy USA makes the outlandish argument that Nuance contends that Abbyy USA must allege that it is "totally shut out by the exclusive contracts." Opp. at 5.  Such is not the case:  Nuance has consistently taken the position that Abbyy USA must allege that the alleged exclusive contracts between Nuance and "certain retail outlets" foreclose a significant portion of the market—not the entire market.  Abbyy USA has made no such allegations, and indeed makes no allegations that it was foreclosed from any meaningful portion of the market.

Abbyy USA suggests that even a small degree of foreclosure, such as "6.7%" or "10-15%, is enough to raise a jury question." *See* Opp. at 6.  Abbyy USA misses the point:  Abbyy USA fails to allege anywhere in its claim **any degree of foreclosure whatsoever**.  Abbyy USA's failure to allege any foreclosure at all is reason enough to dismiss this claim.[3]

Finally, Abbyy USA asserts that exclusive dealing "should not be viewed in isolation," that "the relevant facts are often in possession of the defendant," and "that this is a fact-sensitive inquiry that is not to be determined at the pleading stage." Opp. at 6.  There is no support for Abbyy USA's interpretation of the law, and nowhere does Abbyy USA explain how viewing the exclusive dealing claim along with its other insufficiently pleaded allegations makes the exclusive dealing claim any more viable. *Id.* at 5-7.  In short, Abbyy USA does not dispute Nuance's arguments regarding the sufficiency of its claim; instead, it relies upon its argument that it should be relieved of any additional pleading requirements simply because it pleads that Nuance has a high market share.  Fortunately, there is no precedent whatsoever to support Abbyy USA's

---

[3] Moreover, Nuance notes that modern exclusive dealing cases suggest that more than 6.7% foreclosure is required. *See Omega Envtl.*, 127 F.3d at 1162 (finding 38% foreclosure insufficient); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001).  The law concerning the legality of exclusive dealing was substantially different in the 1949 and 1971 cases cited by Abbyy USA than it is today.  Because Abbyy USA has failed to plead any degree of foreclosure at all, however, the Court need not consider Abbyy USA's reliance on outdated jurisprudence in the context of this motion to dismiss.

NUANCE'S REPLY IN SUPPORT OF MOTION
TO DISMISS CLAIMS SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW
-7-

interpretation of the law—an interpretation that would throw open the floodgates of litigation to any plaintiff who alleges no more than that a defendant has a high market share in some relevant product market.

### 2. Agreements with Competitors

The second "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "sought to reach agreement with competitors on pricing so that Nuance could raise prices without regard to market pressure." FAC ¶ 38(b).

Remarkably, Abbyy USA asserts that it "never intended to allege a conspiracy, price-fixing, or an agreement between co-conspirators." Opp. at 9. Abbyy USA's interpretation of its claim defies comprehension: The claim alleges that Nuance "sought to reach agreement with competitors on pricing so that Nuance could raise prices without regard to market pressure." FAC ¶ 38(b). If this allegation does not allege a conspiracy, or a price-fixing claim, or an agreement between co-conspirators, then it is unclear what exactly Abbyy USA believes it is alleging. Instead of explaining how the allegation of reaching agreement with competitors is sufficient to state a claim, Abbyy USA defends its position merely by explaining that this allegation is not to be interpreted as a conspiracy, a price-fix, or an agreement among competitors or "co-conspirators." Because Abbyy USA does not provide an alternative interpretation of its allegation, Nuance refers the Court to the arguments made in its opening brief in support of its dismissal. *See* Motion at 7-9.

In addition, Abbyy USA asserts that "questions relating to antitrust injury generally are not amenable to resolution at the pleadings stage" because antitrust injury must be proven at trial. Opp. at 7 (*citing Haff v. Jewelmont Corp.*, 594 F. Supp. 1468, 1472 n.2 (N.C. Cal. 1984)). The question here, of course, is whether in this particular case Abbyy USA has alleged facts that, if true, establish that it has suffered antitrust injury. On this question, Supreme Court cases have long held that competitors do not suffer antitrust injury, and cannot recover damages, due to agreements by their competitors to charge higher prices. *See Matsushita*, 475 U.S. at 582-83; *Atl. Richfield Co.*, 495 U.S. at 337. Thus, Abbyy USA does not have antitrust standing and no

amount of further discovery into its allegations of agreements among Nuance and its competitors will change the law articulated in *Matsushita* and *ARCO.*

Abbyy USA suggests that it has antitrust standing under what it characterizes as a three-part test in *Associate General Contractors*, 459 U.S. 519. As explained in detail in Nuance's opening brief, there are actually six factors to be considered for antitrust standing. Motion at 6-7. Abbyy USA wholly fails to address three of the six factors. Opp. at 7-8. On the three factors it selectively chose to address, it makes unconvincing arguments in support of standing: Abbyy USA claims that it suffered injury of the type Congress sought to redress through private antitrust enforcement, because it suffered lost sales and profits. Unfortunately, Abbyy USA never explains how an agreement among competitors to raise price would cause it to lose sales and profits. Abbyy USA suggests that it could not benefit from increased prices because it was "foreclosed from even competing in certain retail outlets." Opp. at 8. Even if Abbyy USA were foreclosed from "certain retail outlets," that does not establish that Abbyy USA suffered antitrust injury due to a conspiracy to raise prices and, in any event, Abbyy USA still has not alleged how much of the market was foreclosed by Nuance's exclusive contracts.

### 3. Acquisition of Competitors

The third "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "acquired and sought to acquire competitors to reduce supply and raise prices." FAC ¶ 38(c). Nuance explained that this allegation should be dismissed because Abbyy USA has failed to identify which competitors Nuance acquired, when they were acquired, whether these competitors also sold Full Text OCR software, what market share these competitors had, or whether any of these acquisitions provided Nuance with market power. Motion at 14-15. Absent these facts, the unremarkable allegation that Nuance has acquired competitors fails to state a claim.

In addition, as a matter of law, as a competitor, Abbyy USA does not have standing to bring this claim. If true, as explained in its opening brief, Abbyy USA stood to benefit from the alleged reduced supply and increased prices for Full OCR Text software resulting from the alleged acquisitions of competitors and, therefore, Abbyy USA suffers no antitrust injury. *See*

*Matsushita*, 475 U.S. at 582-83. Therefore, even if this claim had otherwise alleged sufficient facts to state a claim, Abbyy USA would have no standing to pursue such a claim.

### 4.     Litigation Threats

The fourth "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "threatened competitors and customers of competitors with increased litigation," if said competitors refused to engage in anticompetitive conduct. FAC ¶ 38(d). As Nuance explained, this allegation is insufficient to state a claim because (1) it is not a violation of the antitrust laws to assert a valid legal claim under *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993), unless the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) to the extent that this allegation suggests that Nuance sought to reach anticompetitive agreements with its competitors, the claim is insufficient under *Twombly* to state a claim. Motion at 10-11.

In response, Abbyy USA contends that "determination of whether the 'sham litigation' exception … applies in a particular case requires an analysis of whether the litigation in question was objectively baseless and done with the intent of interfering directly with the business relationships of a competitor." Opp. at 10. Once again, Abbyy USA asserts that it should have recourse to discovery to resolve factual questions that are not even raised by its conclusory pleadings. Abbyy USA does not allege that Nuance ever engaged in "objectively baseless" or "sham litigation" or perpetrated any fraud of any kind. Thus, Abbyy USA should not be permitted to engage in discovery to support a contention that Nuance has engaged in "sham litigation" when the claim makes no such allegations. *See Syncsort Inc.*, 50 F. Supp. 2d at 334-35 (dismissing "sham litigation" claim where defendant alleged that plaintiff engaged in "bringing [of] anti-competitive litigation," "without offering examples"); *see also Viva Optique, Inc. v. Contour Optik, Inc.*, No. 03 Civ. 8948, 2007 WL 4302729, at *2 (S.D.N.Y. Dec. 7, 2007) ("The Amended Complaint is bereft of any factual allegation that would support a finding that the patent infringement claims that have been raised by Defendants in separate litigation are objectively baseless."); *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932, 2002 WL 31253199, at *8 (E.D.N.Y. Sept. 30, 2002).

Even if Abbyy USA had alleged sham litigation, which it has not, such allegations would need to include allegations of the "specific activities" that take the conduct outside the protection of *Noerr-Pennington* immunity under the applicable heightened pleading that governs such "sham litigation" claims. *See Oregon Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("Where a claim involves the right to petition governmental bodies under *Noerr-Pennington*, however, we apply a heightened pleading standard…. [W]e required that the plaintiffs satisfy more than the usual 12(b)(6) standard, holding that 'a complaint must include allegations of the specific activities' which bring the defendant's conduct into one of the exceptions to Noerr-Pennington protection…. This heightened level of protection accorded petitioning activity is necessary to avoid 'a chilling effect on the exercise of this fundamental First Amendment right.'") (internal citations omitted).

The two cases cited by Abbyy USA do not hold differently. *See Salomon S.A. v. Alpina Sports Corp.*, 737 F. Supp. 720, 725 (D.N.H. 1990) ("The Court finds that these allegations satisfy the standard of specificity necessary to sustain, at this initial stage, Alpina's claim that Salomon's action was a 'sham'."); *SJ Advanced Tech. & Mfg. Corp. v. Junkunc*, 627 F. Supp. 572, 579 (N.D. Ill. 1986) (same). In both of those cases, the plaintiff pleaded that the litigation was a "sham"—Abbyy USA has not. Although Abbyy USA does not contend that the standard to determine whether litigation is a "sham" should be the one articulated in these cases, Nuance notes that both cases cited by Abbyy USA have been overruled to the extent that they allow a plaintiff to proceed to discovery regarding the defendant's subjective intent in bringing a lawsuit to prove that the litigation was a "sham" without first establishing that the litigation was objectively baseless. The Supreme Court's decision in *Professional Real Estate Investors* held that "only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." 508 U.S. at 60; *see also Viva Optique, Inc.*, 2007 WL 4302729, at *2 ("Although Plaintiffs do allege that Defendants brought suit believing that the patents were actually not infringed or invalid, Defendants' subjective intent is irrelevant unless it is first found that the challenged litigation is objectively meritless.").

NUANCE'S REPLY IN SUPPORT OF MOTION
TO DISMISS CLAIMS SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW

-11-

Moreover, Abbyy USA makes no attempt to respond to Nuance's second point—that to the extent Abbyy USA is alleging that Nuance sought to reach anticompetitive agreements with competitors, it has not pleaded sufficient facts under *Twombly*.

### 5. Patent Acquisitions

The final "predatory act" alleged in Abbyy USA's Sixth Claim is that Nuance "acquired patents covering OCR technology, with the purpose of substantially lessening competition in software markets." FAC ¶ 38(e). Nuance explained that this allegation is insufficient to state a claim because it provides no basis to conclude that Nuance's alleged patent acquisitions have substantially lessened competition under Section 7 of the Clayton Act or have resulted in monopolization under Section 2 of the Sherman Act. Motion at 11-12. Abbyy USA's bare allegation that Nuance has acquired patents covering OCR technology for the purpose of substantially lessening competition is, again, a conclusory allegation that should be dismissed under *Twombly*. Abbyy USA does not allege what patents were acquired, when they were acquired, who they were acquired from, or what specifically they encompass. Secondly, Abbyy USA does not allege any facts to establish that Nuance actually owned patents which when combined with the patents it later acquired prevented competitors from entering the Full Text OCR market or resulted in an increase in market power in violation of Section 2 of the Sherman Act. In sum, Abbyy USA does not allege that any of these patent acquisitions resulted in Nuance obtaining market power in Full Text OCR technology.

Finally, Abbyy USA cites *United States v. Microsoft* for the unremarkable proposition that "'[i]ntellectual property rights do not confer a privilege to violate the antitrust laws.'" 253 F.3d at 63 (citation omitted). If Abbyy USA is suggesting that the government's 50-plus page Complaint detailing the anticompetitive conduct engaged in by Microsoft is similar to its one paragraph allegation of Nuance's alleged violations of the Sherman Act, its reliance on *Microsoft* is sorely misplaced. Abbyy USA does not provide any explanation whatsoever as to why it need not allege any basic facts regarding the allegedly acquired patents in order to state a claim under Section 2 of the Sherman Act. Once again, Abbyy USA would have this Court allow a plaintiff to sue and proceed to discovery against any company with an alleged high market share and a patent

portfolio that was assembled, at least in part, through acquisition, without the need for any other allegations. The Court should dismiss the insufficiently pleaded patent acquisition claims on this ground as well.

### B.     Seventh Claim

In its Seventh Claim, Abbyy USA alleges that the conduct alleged in its Sixth Claim amounted to attempted monopolization under Section 2 of the Sherman Act. *See* 15 U.S.C. § 2 ("Every person who shall monopolize, or attempt to monopolize…"). In its opening brief, Nuance explained that this claim for attempted monopolization fails to state a claim for the same reasons that the allegations of "predatory acts" asserted in the Sixth Claim failed to state a claim. Motion at 12-13. Abbyy USA makes no effort to deny that whether the conduct alleged is considered to be a violation of Section 2 as monopolization or attempted monopolization, the claims are still insufficiently pleaded.

Nuance also explained in its opening brief that the allegations of the Seventh Claim plainly contradicts Abbyy USA's allegation in the Sixth Claim that the relevant market is the United States, alleging instead that there are "certain geographic submarkets" within the United States. *Id*. at 11. In its Opposition, Abbyy USA merely elaborates upon its allegations, suggesting that perhaps Wyoming is a relevant market, not the United States as a whole. Opp. at 12. Abbyy USA does not provide any evidence that Nuance engaged in anticompetitive conduct anywhere in the United States, and for that reason, its claims must be dismissed.

In any event, the problem with the Seventh Claim as alleged is not simply that Abbyy USA contradicts its own initial allegations regarding the relevant market, but that Abbyy USA does not allege any facts to support that Nuance had a dangerous probability of achieving market power in the same "sub-markets" in which Abby USA admits Nuance did not have market power. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008) ("'[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'") (alteration in original).

NUANCE'S REPLY IN SUPPORT OF MOTION
TO DISMISS CLAIMS SIX THROUGH NINE
CASE NO.:  CV-08-1035-JSW

-13-

Finally, as Nuance explained in its opening brief, Abbyy USA's conclusory allegations that "there is a dangerous probability that Nuance will successfully achieve monopoly power in the market for Full Text OCR software products in those markets where it has not achieved actual monopolization," and that "Nuance has manifested a specific intent to monopolize the market for Full Text OCR software products," FAC ¶¶ 46-47, merely parrot the elements of attempted monopolization. Under the law, far more is required of Abbyy USA for this claim to survive a motion to dismiss. *See Twombly*, 127 S. Ct. at 1968; *SmileCare Dental Group*, 88 F.3d at 783. Thus, the underlying conduct at issue, which Abbyy USA alleged in its Sixth Claim, fails to state a claim, whether it is considered as actual monopolization or attempted monopolization.

**C.     Eighth Claim**

Abbyy USA's Eighth Claim for exclusive dealing is identical to its allegation of exclusive dealing in its Sixth Claim and should be dismissed for the same reasons explained above. Because the considerations that apply to exclusive dealing claims under Sections 1 and 2 of the Sherman Act are similar, Nuance relies upon its arguments above to support the dismissal of this claim as well. *See Microsoft Corp.*, 253 F.3d at, 70 (Section 1 exclusive dealing requirements stricter than under Section 2); *Omega Envtl.*, 127 F.3d at 1167 n.13 (same).

**D.     Ninth Claim**

The Ninth Claim alleges the same conduct alleged in the Sixth Claim as a violation of Section 7 of the Clayton Act instead of Section 2 of the Sherman Act. For the reasons explained above and in Nuance's Opening Brief, this claim should be dismissed. Motion at 21-22.

More importantly, Abbyy USA asserts that while the acquisition of Caere Corporation in 2000 did not violate Section 7, "Nuance's use of the assets acquired" from Caere violate Section 7 and toll the four-year statute of limitations. Opp. at 13-14. *Midwestern Mach. v. Northwest Airlines, Inc.*, 392 F. 3d 265, 271-273 (8th Cir. 2004), makes a clear distinction between market power or foreseeable conduct known at the time of merger that flows naturally from the merger itself versus "new uses" of the assets acquired by the merger that cause injury to the plaintiff. *Midwestern Mach.*, 392 F. 3d at 271- 273 ("Even if the merger itself was unlawful, the continued existence of the merged entity is not a continuing violation: It is simply the natural unabated

inertial consequence of the merger."). The leading antitrust law treatise interprets the *Midwestern Machinery* case in the same way:

> In brief, under the Eighth Circuit ruling, the statute of limitation ordinarily runs on a merger from the date of acquisition … the statute might not be tolled if the merger caused the plaintiff no injury at the time it occurred, but subsequently the acquired assets were used in an anticompetitive way not contemplated at the time of the acquisition and caused the plaintiff injury. Once again, this subsequent and new use must be causally linked to the merger.

Phillip Areeda & Herbert Hovenkamp, Antitrust Law § 320c5 (3d ed. 2007 & 2006 Supp.).

In this case, the Complaint asserts that after the Caere acquisition, "Nuance engaged in conduct such as that alleged above." FAC ¶ 56. In its opposition, Abbyy USA does not explain how any of the conduct previously alleged constitutes a "new use" of the assets acquired from Caere in 2000. In fact there are no allegations as to what assets were acquired in Caere that subsequently allowed Nuance to engage in the alleged conduct. Abbyy USA makes no allegations that the assets acquired from Caere were "used in a different manner from the way that they were used when the initial acquisition occurred." *Midwestern Mach.*, 392 F. 3d at 273. The Ninth Claim must therefore be dismissed.

## III.     CONCLUSION

For the foregoing reasons, Nuance respectfully requests that this Court dismiss Abbyy USA's Sixth through Ninth Claims.

Dated:  August 1, 2008                    WILSON SONSINI GOODRICH & ROSATI

                                          By:_____/s/_____
                                                  S. Michael Song

                                          Attorneys for Defendant
                                          NUANCE COMMUNICATIONS, INC.