IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBYY USA SOFTWARE HOUSE, INC., | |
| Plaintiff, | No. C 08-01035 JSW |
| v. | |
| NUANCE COMMUNICATIONS INC, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIMS SIX THROUGH NINE OF THE FIRST AMENDED COMPLAINT** |
| Defendant. | |
| / | |

Now before the Court is the motion to dismiss claims six through nine of Abbyy USA Software House Inc.'s ("Abbyy") amended complaint filed by Defendant Nuance Communications Inc. ("Nuance"). Nuance moves to dismiss the antitrust causes of action from the amended complaint. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby GRANTS Nuance's motion to dismiss claims six through nine of the amended complaint.

**BACKGROUND**

On June 4, 2008, Abbyy filed its amended complaint for declaratory judgment for noninfringement and invalidity of certain patents covering OCR software technology owned by Nuance. In its amended complaint, Abbyy added antitrust claims alleging that Nuance engaged in a series of practices that constitute monopolization in violation of Section 2 of the Sherman Act (Claim Six), attempted monopolization in violation of Section 2 of the Sherman Act (Claim Seven), exclusive dealing in violation of Section 1 of the Sherman Act (Claim Eight), and a

substantial lessening of competition in violation of Section 7 of the Clayton Act (Claim Nine). By its current motion, Nuance seeks to dismiss the antitrust claims only.

The Court will address other facts as relevant in the analysis.

**ANALYSIS**

**A.      Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of [its] entitlement to relief." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. *Id.* at 1974.

**B.      Count Six – Actual Monopolization in Violation of Sherman Act Section Two.**

Plaintiff's sixth claim alleges monopolization under Section 2 of the Sherman Act. In the complaint, Plaintiff sets out five separate predatory acts, which Abbyy alleges Nuance engaged in with "the purpose of stabilizing prices and/or excluding competition." (FAC ¶ 38.) Abbyy alleges that Nuance: (a) entered into exclusive contracts with retail outlets in an attempt to foreclose the number of outlets available to competitors' products; (b) sought to reach agreement with competitors on pricing so that Nuance could raise prices without regard to market pressure; (c) acquired and sought to acquire competitors to reduce supply and raise prices; (d) threatened competitors and customers of competitors with increased litigation; and

1  (e) acquired patents covering OCR technology, with the purpose of substantially lessening
2  competition in software markets. (*Id.*)

3  In moving to dismiss the complaint, Nuance argues that each predatory act is
4  insufficiently pled as a basis to state a cause of action for violation of Section 2 of the Sherman
5  Act.

### a.   Exclusive Dealing.

7  The first predatory act Abbyy alleges is that Nuance entered into exclusive contracts
8  with retail outlets in an attempt to foreclose the number of outlets available to competitors'
9  products. (*Id.* ¶ 38(a).) Abbyy fails to allege with specificity any information regarding the
10 types of contracts, the contracting parties, the degree of the market allegedly foreclosed as a
11 result of these contracts, or whether alternative channels for marketing were available to Abbyy
12 or its competitors. Under an exclusive distributorship theory, Plaintiff must allege more than
13 simply the existence of an exclusive contract. *See Kingray, Inc. v. National Basketball Ass'n*,
14 188 F. Supp. 2d 1177, 1196-97 (S.D. Cal. 2002); *see also Rutman Wine Co. v. E. & J. Gallo
15 Winery*, 829 F.2d 729, 735 (9th Cir. 1987) (holding that "an exclusive distributorship is not,
16 standing alone, a violation of antitrust laws"). "For an antitrust violation to occur, the exclusive
17 agreement must intend to or actually harm competition in the relevant market." *Id.* (citations
18 omitted).

19 Although the complaint generally alleges that Nuance engaged in exclusive contracts,
20 for "the purpose of stabilizing prices and/or excluding competition," thereby suggesting an
21 intent to harm competition, the allegations are conclusory and insufficient to withstand the
22 motion to dismiss. The only injury Abbyy alleges in the complaint is that "certain retail
23 outlets" were foreclosed to competitors. (*Id.* ¶ 43.) Abbyy does not allege that the dominance
24 over certain retail outlets has the effect of restricting competition in the relevant market.
25 Virtually every contract forecloses the market or excludes other sellers from some portion of the
26 market. *See Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997)
27 (citing *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236 (1st Cir. 1983)). Even
28 accepting as true the allegation that Abbyy is foreclosed from "certain retail outlets," this fails

3

to constitute an allegation of harm to the market generally or specific harm suffered by Abbyy. Abbyy does not allege that it has been foreclosed from selling its products and, in fact, has alleged that direct sales and licensing agreements are alternative distribution channels for the same software products. (FAC ¶¶ 33-35.) Therefore, Abbyy has failed to state an antitrust claim based upon the predatory act of exclusive dealing. Absent well-pleaded allegations of anticompetitive conduct, Abbyy may not maintain a cause of action for monopolization, even considering its allegations of large market share. *See e.g., Dickson v. Microsoft Corp.*, 309 F.3d 193, 209 n.17 (4th Cir. 2002) (dismissing Sherman Act claims where defendant was alleged to have 90% market share in personal computer operating software market in the exclusive marketing context). Abbyy has not pled any foreclosure whatsoever in the relevant market.

### b.     Agreements with Competitors.

The second predatory act in the sixth claim for relief is that Nuance "sought to reach agreement with competitors on pricing so that Nuance could raise prices without regard to market pressure." (FAC ¶ 38(b).)

First, just as with the claim of exclusive dealing, Abbyy's pleading fails to state with any specificity the grounds for relief. In order to allege an agreement between antitrust co-conspirators, "the complaint must allege fact such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1970 n.10); *see also Rutman Wine*, 829 F.2d at 736 ("The pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.'") (citations omitted). Although in its opposition, Abbyy contends that it is not seeking to plead a conspiracy, the complaint sets outs agreements with competitors as a predatory act and the pleading fails for lack of specificity.

In addition, the claim as pled fails to allege a cognizable antitrust injury. Abbyy merely alleges that Nuance "sought to reach agreement with competitors on pricing" and does not

4

allege whether any such agreements were manifest or any specifics beside the conclusory allegation that such agreements were sought. Further, and more importantly, Abbyy fails to allege facts indicating that it has standing to address any potentially cognizable antitrust injury that could result from the alleged agreements to conspire with competitors on pricing.

The class of persons who may maintain a private damage action under the antitrust laws is broadly defined in Section 4 of the Clayton Act, which provides in pertinent part: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold damages by him sustained." 15 U.S.C. § 15. Section 16 of the Clayton Act provides in pertinent part that: "Any person ... shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. "A literal reading of the statute is broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." *Associated General Contractors of California v. California State Council of Carpenters ("AGC")*, 459 U.S. 519, 529 (1983). However broadly described, it "is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 477 (1982).

The plaintiff must have antitrust standing and to determine whether that requirement is met, the Court must "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *ACG*, 459 U.S. at 535. The Ninth Circuit has summarized the factors relevant to a finding of antitrust standing as follows: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *American Ad Mgmt. v. General Tel. Co.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999)). To conclude that there is antitrust standing, the

1   Court need not find in favor of the plaintiff on each factor. *American Ad Mgmt.*, 190 F.3d at
2   1055 (citing *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997)).  Instead, the Court must
3   balance the factors, giving great weight to the nature of the plaintiff's alleged injury. *Id.*

4   The first factor – the nature of plaintiff's alleged injury – requires a showing of
5   "antitrust injury, *i.e*., injury of the type the antitrust laws were intended to prevent and that
6   flows from that which makes defendants' acts unlawful." *Knevelbaard*, 232 F.3d at 987
7   (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).  Parsing the
8   Supreme Court's definition of injury, the Court must find four factors: (1) unlawful conduct, (2)
9   causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful,
10  and (4) that is of the type the antitrust laws were intended to prevent. *See id.*  Antitrust injury is
11  harm that "reflect[s] the anticompetitive effect either of the violation or of anticompetitive
12  effects made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S.
13  477, 489 (1977).   Lastly, to qualify as antitrust injury, any harm allegedly suffered must have
14  occurred in the market where competition is allegedly being restrained. *Association of Wash.*
15  *Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 704 (9th Cir. 2001) (quoting *American*
16  *Ad Mgmt.*, 190 F.3d at 1057).

17  As currently pled, Abbyy lacks standing to make out a claim for antitrust injury.
18  Competitors do not suffer antitrust injury and cannot recover damages where the only injury
19  alleged is increased prices. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475
20  U.S. 574, 583 (1986) (holding that competitor respondents could not recover damages for any
21  conspiracy by petitioners to charge higher than competitive prices because such restrictions,
22  "although harmful to competition, actually *benefit* competitors by making supracompetitive
23  pricing more attractive).  Although direct purchasers of the software would have standing to
24  allege a price-fixing claim, as pled, Abbyy does not have standing to allege injury from having
25  its competitors agree to raise prices.  Because Abbyy cannot demonstrate any injury based on
26  the allegations in the complaint, it does not currently have standing to allege an antitrust claim.
27  Abbyy argues that this analysis ignores the allegation that Abbyy has been foreclosed from
28

6

"certain retail outlets." However, as demonstrated *supra*, Abbyy's allegations regarding foreclosed market opportunities is currently insufficient to state a claim.

### c. Acquisition of Competitors.

Abbyy alleges that Nuance "acquired and sought to acquire competitors to reduce supply and raise prices." (FAC ¶ 38(c).) Again, the Court finds the allegation conclusory and without sufficient specificity. Also, for the same reasons stated above, the allegation regarding the effect of the acquisitions – reduced supply and raised prices – indicates that Abbyy did not suffer antitrust injury as a result of the alleged actions. As a competitor, Abbyy stands to profit from the alleged reduced supply and raised prices for the software product. There is no allegation of anticompetitive injury to Abbyy. Therefore, the predatory act fails to make out a claim and fails to indicate that Abbyy has standing to assert such a claim.

### d. Litigation Threats.

The fourth predatory act alleged by Abbyy is that Nuance "threatened competitors and customers of competitors with increased litigation ... with the purpose of stabilizing prices and/or excluding competition." (FAC ¶ 38(d).) Nuance argues that it would be entitled to immunity unless the complaint alleged that it threatened competitors with "objectively baseless" litigation. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*, 508 U.S. 49, 60 (1993) (holding that objectively baseless, or sham, litigation is an exception to immunity). However, at this stage in the proceedings, the Court cannot adjudicate whether the litigation allegedly initiated by Nuance "with the purpose of stabilizing prices and/or excluding competition" is baseless. The allegations, as pled, are sufficient to raise the specter that the litigation was meritless and therefore the Court finds the allegations raise a potentially valid premise as a predatory act. The issue of whether litigation initiated by Nuance does in fact fall within an exception to immunity is a question of fact, not resolvable at this procedural stage.

### e. Patent Acquisition.

The final predatory act alleged by Abbyy in its sixth claim for relief is that Nuance "acquired patents covering OCR technology ... with the purpose of substantially lessening

7

competition in software markets." (FAC ¶ 38(e).) Although there are no details of the patents alleged, Abbyy does allege that the acquisition of the patents was "with the purpose of stabilizing prices and/or excluding competition." (*Id.*) Therefore, based on the face of the pleadings, Abbyy has stated a valid predatory act. *See United States v. Microsoft*, 253 F.3d 34, 63 (D.C. Cir. 2001 (en banc) (holding that intellectual property rights lawfully acquired may give rise to antitrust liability and does not grant holder an absolute and unfettered right to use the intellectual property in any manner). The issue of whether Nuance uses its intellectual property in a manner resulting in obtaining market power in the OCR technology field is a matter of disputed fact, not resolvable at this stage in the proceedings.

Although the Court finds that upon the bare pleadings, Abbyy has stated sufficient facts to make out two predatory acts of antitrust liability, the Court finds that the sixth claim for relief fails because Abbyy has not demonstrated that it may maintain standing as a competitor to sue for damages.

### C. Seventh Claim – Attempted Monopolization in Violation of Section Two of the Sherman Act.

Abbyy's seventh claim for attempted monopolization in violation of Section 2 of the Sherman Act merely incorporates the same predatory acts and alleges that, in certain geographical sub-markets within the United States, Nuance has had less than enough market power to actually monopolize and so is liable for attempted monopolization. (FAC ¶¶ 44, 45.) For the same reasons that its sixth cause of action fails for lack of standing to allege actual injury, Abbyy's seventh cause of action for attempted monopolization fails.

### D. Eighth Claim – Contracts in Restraint of Trade in Violation of Section One of the Sherman Act.

In its eighth cause of action, Abbyy alleges that "Nuance has entered into exclusive dealing with retailers whereby the retailer is prohibited from selling, marketing and/or displaying competitors' OCR software products." (FAC ¶ 51.) Abbyy claims that this exclusive dealing is in violation of Section 1 of the Sherman Act. (*Id.*) Abbyy's claim for exclusive dealing is identical to the claim made under its sixth cause of action under Section 2 of the Sherman Act. Based on the same premise, this claim also fails for lack of standing. *See*

*Microsoft*, 253 F.3d at 70 (holding that Section 1 exclusive dealing requirements are stricter than under Section 2); *see also Omega*, 127 F.3d at 1167 n.13 (holding that no Section 1 or Section 2 violation occurred where broader requirements of Clayton Act Section 3 have not been met).

**E.     Ninth Claim – Violation of Section Seven of the Clayton Act.**

Abbyy's ninth claim for violation of Section 7 of the Clayton Act is premised upon the same conduct alleged in the sixth claim and the allegations similarly fail to establish how the conduct with respect to acquiring competitors and patents had the effect of substantially lessening competition or tending to create a monopoly under the Clayton Act. *See* 15 U.S.C. § 18.

In addition, Abbyy also alleges that Nuance acquired Caere Corporation in 2000, "which has had the effect of substantially lessening competition in certain relevant markets, including the market for Full Text OCR software products" and "eliminating capacity for the production of software with a resulting stabilizing of prices all to the detriment of the consuming public." (FAC ¶¶ 55, 56.) Just as in the sixth claim, Abbyy does not appear to have standing to bring a claim as a competitor, who stands to benefit from the alleged anticompetitive acquisition of Caere Corporation. *See Matsushita,* 475 U.S. at 582-83 (holding that competitors cannot recover damages for alleged agreement to charge higher than competitive prices as "competitors ... stand to gain from any conspiracy to raise the market price.") Even Abbyy's allegations in the seventh claim for relief indicate that Nuance's alleged activities have all been "to the detriment of the consuming public." (FAC ¶ 56.)

Nuance also argues that any allegation regarding to acquisition of Caere Corporation in 2000 is barred by the four-year statute of limitations. *See* 15 U.S.C. § 15b. Nuance contends that it is the acquisition that Abbyy alleges caused the injury and there is therefore no reason to toll the statute of limitations. However, Abbyy argues that it has properly pled that the assets acquired from Caere Corporation were used in a different way from the manner in which they were used when the initial acquisition occurred and that the new use has injured it. On this basis, Abbyy contends that the statute of limitations begins again from the time that injury

9

1  occurs from the new use of the assets acquired from Caere Corporation.  *See Midwestern*
2  *Machinery Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 273 (8th Cir. 2004) (holding that "[i]f
3  assets are used in a different manner from the way that they were used when the initial
4  acquisition occurred, and that new use injures the plaintiff, he or she has four years from the
5  time that the injury occurs to sue") (citations omitted).  Although Abbyy does allege that it was
6  following the acquisition that Nuance engaged in conduct which had the effect of lessening
7  competition and stabilizing prices, Abbyy does not allege any specific and separate conduct,
8  following the acquisition of Caere Corporation, that identifies any new use of the assets that
9  would reset the time for the tolling of the statute of limitations.  Therefore, the ninth claim, as
10 currently pled, fails to state a timely cause of action.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Nuance's motion to dismiss the six through ninth causes of action.  The Court grants the motion without prejudice to refiling an amended complaint that may cure the current defects in the pleading.  Although the Court does not find that Abbyy has standing to sue in antitrust for violations as a competitor and not a consumer of Nuance's software products, this finding is based upon Abbyy's failure to allege sufficiently harm beside the alleged increase in prices of the subject software or any foreclosure in the relevant market causing it a cognizable injury.

Should Abbyy seek to amend its complaint to satisfy the present defects, it shall file a second amended complaint by no later than December 5, 2008.  Nuance shall then have 30 days thereafter to respond.  If no amended complaint is filed, the patent claims remain viable.  Lastly, the case management conference set for December 12, 2008 at 1:30 p.m. is HEREBY VACATED and RESET to February 13, 2008 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: November 6, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE