IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUANCE COMMUNICATIONS, INC. A Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ABBYY SOFTWARE HOUSE, INC., a California corporation, and LEXMARK INTERNATIONAL, INC., a Delaware corporation,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　／ | No. C 08-02912 JSW<br><br>**TENTATIVE RULINGS AND QUESTIONS RE CLAIM CONSTRUCTION** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON MARCH 27, 2012, AT 1:30 p.m.:

The Court has reviewed the parties' briefs and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such

1  authority.  The Court suggests that associates or of counsel attorneys who are working on this
2  case be permitted to address some or all of the Court's questions contained herein.

3  The parties shall each have 90 minutes to present their respective arguments on claim
4  construction.  The Court provides its tentative constructions of the eight disputed terms.

**1.   "Archiving"**

The Court **tentatively adopts** Nuance's construction:  " Archiving"

The Court finds no reason to import the negative limitation of the location where the electronic document is archived.  In addition, in Figure 18 of the '404 Patent, it is clear that the archive interface allows the user to browse directly in an archive storage location.  Accordingly, for the user to be able to browse this location, it must be readily accessible from this interface.

What is Abbyy/Lexmark's best argument?

**2.   "Electronically organizing"**

The Court **tentatively adopts** Nuance's construction:  "Examining via a computer process."

The patent specification clearly provides that human intervention can be involved in the archiving process when "[t]he file helper also prompts a user, if the user so desires, before the system archives a document in accordance with the user selected options."  ('404 Patent at 17:25-27.)

What is Abbyy/Lexmark's best argument in support of the term excluding human intervention?

**3.   "Attribute"**

The Court **tentatively adopts** the following construction:  "information about a document."

The specifications clearly outline that the attribute data may include information contained in the document, such as key words, raw text, subject matter, and positioning.  *See Wright Med. Tech, Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) (holding that the court "must not interpret an independent claim in a way that is inconsistent with a claim

2

which depends from it.")  The Court is persuaded that the data in the document may also be extracted as attribute data as well as data about the document.

Why should the Court limit the construction to data about (and not also contained in) a document?

### 4. "Archive index"

The Court **tentatively adopts** Nuance's construction: "a data structure that contains reference information for archived documents."

Why should the Court read the limitations into its construction in the absence of express limitation in the intrinsic evidence?  How does Abbyy/Lexmark's proposed construction not render the claim 9 of the '404 Patent, which designates a possible location for the archive memory in a removable storage medium, meaningless**?**

### 5. "Separate"

The Court **tentatively adopts** Nuance's construction: "separate."

The '094 Patent teaches that the data structure file is used to save memory space and is stored in a separate directory, but does not indicate whether that storage is on the same or a physically different memory device.  Although the patent permits that the two are kept separate from each other, it does not dictate that they are on separate memory devices.  The Court finds the term to be clear and need no further construction and sees no reason to import the limitations suggested by Abbyy/Lexmark.

Why should the Court read the limitation of requiring that separate mean physically distinct into its construction?

### 6. "Linking"

The Court **tentatively adopts** Nuance's construction: "associating a file with one or more folders."

All of the claims in which the term "link," "linking" or "linked" is mentioned, the patent describes an association between a document and a folder.  Linking allows a single copy of a particular document to be associated with multiple folders, which provides the utility of

1  multiple copies while expending storage space for only a single copy. (*See* '094 Patent at 5:47-
2  62.)

3        The specification explains that a single copy of the document is stored in one place and
4  multiple folders may be linked to that document. (*See id.* at 5:46-59.)  However, this is merely
5  the preferred embodiment and the invention does not require that the single copy be stored in
6  any particular location, including the folder to which it has been linked.

7        Why should the Court adopt limitations of the preferred embodiment into its
8  construction?

9      **7.   "Network server"**

10        The Court **tentatively adopts** Nuance's construction:  "a server for receiving
11  information from or passing information to a connected network."

12        The key difference in the parties' proposals is that Abbyy/Lexmark attempts to limit the
13  construction of the term to be a physically different hardware device than an application server.
14  Again, Abbyy/Lexmark's attempt to import a negative limitation is not supported by the
15  intrinsic record.  Indeed, the prosecution history confirms that a "server" may be a hardware
16  device, but it may also be a software program.  The claims confirm that the "network server"
17  may be deployed in the Internet in addition to on a local area network, or LAN. (*See* Claims 15
18  and 16 of '161 Patent.)  Absent clear disavowal, there appears to be no reason to import the
19  negative limitation of different hardware devices into the construction.

20        Why should the Court read the proposed limitations into its construction?

21      **8.   "Application server"**

22        The Court **tentatively adopts** Nuance's construction:  "a computer or program on a
23  local network, the internet or other network that has two-way communications with the network
24  server and the document processing applications."

25        The list of limitations suggested by Abbyy/Lexmark are clearly limitations imported
26  from ideas in the specifications.  However, consistent with the rest of the Court's constructions,
27  no where in the patents did the patentees state that the application server must be a physically

4

distinct device or that it have the specific attributes of the limitations selectively culled from the specifications. In fact, the list of limitations would itself require further construction.

Why should the Court read the proposed limitations into its construction?

**IT IS SO ORDERED.**

Dated: March 23, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE